AUGUSTANA PENSION AND AID FUND, Appellant, v. ARTHUR NAGLE et al., Appellees.

No. 43029.

JUNE 21, 1935.

Emmert, James & Lindgren, for appellant.

Hallagan, Fountain & Stewart, for appellees.

HAMILTON, J.—The real estate involved in this foreclosure consists of 80 acres of farm land a few miles north of the city of Des Moines in Polk county, Iowa. The title to the farm is owned jointly by the defendant Arthur Nagle, who owns an undivided one-third interest, and his five children, four of whom are minors, who own the other undivided two-thirds interest. Elmer Myhre is the guardian of the minor children. On December 18, 1931, the guardian, under order of court, joined with Arthur Nagle and his wife, and Mrs. Gladys Nagle Poindexter, the adult child, in the execution to the plaintiff, Augustana Pension and Aid Fund, a corporation, of a real estate mortgage on said 80-acre tract for $6,500. The farm is occupied by Arthur Nagle and his wife and minor children, forty acres of which constitute their homestead. The mortgage became delinquent under its terms and was foreclosed by decree of foreclosure entered on the 8th day of May, 1934. The period of redemption had not expired and no sheriff's deed had been issued at the time the application for extension was filed. There was a deficiency judgment of $348.42. A receiver was appointed, and under an order of court the receiver leased the real estate for the crop year ending March 1, 1935, to Arthur Nagle for the sum of $400, $190 of which rent is still unpaid. The total indebtedness at the time of the trial below represented by the judgment in foreclosure was $8,423.48.

This farm has been the home of Arthur Nagle for about twenty-three years. There is a modern house on the farm with lights, furnace, and water. The house consists of five rooms and a bath and a full-sized basement. It was built about seven years ago. It has a fireproof roof. There is also a dairy barn which holds fifteen cows and is lighted with electricity. There are other out buildings and an orchard. Mr. A. O. Hauge, who is secretary-treasurer of the local association that guarantees the loans to the Federal Land Bank

in that vicinity, and who has been engaged in the farm land business for twenty years, and was a disinterested witness, appraised this farm for loan purposes on the 4th day of August, 1933, and described this farm in the following language:

"It is a very classy farm. It is away above the average and is a very fine piece of land. It is a black loam soil and a clay subsoil. There is no rough land, it is all capable of being cultivated. It is well kept up. The improvements need some painting. I appraised the farm without the buildings at $125.00 an acre. I put a valuation on the house at that time of $3,000.00 and on the barn of $1,000.00. I would say that the fair and reasonable value of this farm would be $135.00 an acre. If this farm were put up for sale at the present time, for sale in just the ordinary way, listed with someone for sale, it would bring in my opinion from $125.00 to $135.00 an acre."

The commitment for a Federal Land Bank loan was made for $7,500, but was rejected on technical legal grounds, growing out of the facts in connection with the guardianship of the minor children. Other testimony on the question of value varied from $8,350, the lowest valuation, to $150 an acre, the highest valuation. John S. Floren, a witness for the plaintiff, and a member of the board of directors of the plaintiff company, and also a member of the loan committee, placed the valuation at $110 an acre as the top price, but on cross-examination stated that:

"If the farm could be sold and delivered today I don't think they (the company) would lose any money."

In addition to the mortgage indebtedness, the defendant Arthur Nagle owes the Farmers Savings Bank of Ankeny, Iowa, in the neighborhood of $2,600, personal indebtedness, secured by a chattel mortgage on the stock and machinery. The value of the security, according to the testimony, is within one or two hundred dollars of the amount of the indebtedness. In addition to this, Arthur Nagle has personal judgments against him amounting to about $350. In addition to the judgment debt, the plaintiff has been compelled to pay the taxes on the real estate for the years 1932, 1933, and the first half of 1934, in the total sum of $436.30, making a total of $8,859.78. There is a credit of $210 rent paid to the receiver, applied to the payment of taxes, which leaves a balance due the plaintiff of

$8,649.78, with 8 per cent interest from March 8, 1935. There is also a small amount of personal taxes against the defendant Arthur Nagle, which is unpaid. There are no personal debts against the five children who own the undivided two-thirds interest in the farm. There is no evidence that the chattel mortgage was given to the bank for the purpose of covering up or avoiding payment of the interest and taxes on the farm. The indebtedness to the bank had been of long standing. At the time of the trial the bank had been released from Senate File No. 111 (Acts 45th General Assembly, chapter 156) and in the reorganization $1,300 of the personal indebtedness due the bank was retained in the accepted assets and $1,432.18 was set off and included in the trusteed assets. The evidence showed that the income of the defendant from his milk cows at the time of the trial was $120 a month and that he had been paying for the past six or seven months regularly $30 per month on his lease to the receiver, and the testimony was to the effect that he would be able to continue to pay this $30 per month for the remaining period of the lease. The evidence shows that the defendant had purchased an automobile and some furniture on the installment plan and was making some payments to the bank on the indebtedness due the bank, and it is charged by counsel for plaintiff that this extension of the period of redemption is for the benefit of the bank, of which Elmer Myhre, guardian of the minor children, is cashier.

The lower court found that the land, including the buildings, has a value of about $12,000; that the total indebtedness of the defendant Arthur Nagle is less than the present reasonable value of said property; that the money derived from the mortgage was practically all used in improving the premises; that the farm is well improved, is in good condition and repair; that the defendant is reducing his personal indebtedness and that his personal property is almost sufficient to pay his personal obligations with the exception of the amount of the mortgage indebtedness; that the value of the property covered by the mortgage is more than sufficient to secure the payment of the loan, together with the payment of the interest and taxes which might accrue up to March 1, 1937, even though no payments were made during the extension period; that to deny an extension would result in great loss and damage to the defendant Arthur Nagle, and his minor children, and that if the extension is granted, it is reasonable to assume that the defendants will be able to save their property or a large part of it and that no loss

will ensue to the plaintiff; that at the present time the defendants are in financial distress, but they are not insolvent; that it can reasonably be expected that this farm will sell for much more than the total indebtedness of the defendant Arthur Nagle; and that such sale can be made before the expiration of the period of redemption or the property can be refinanced within said period. The court then grants the extension and provides that the defendants shall pay to the clerk of the district court the sum of $30 per month, commencing on April 1, 1935, and ending March 1, 1937, unless otherwise ordered by the court. The decree then provides:

"The court does hereby reserve the right to modify or amend this order respecting the monthly payments during the period of redemption on good cause being shown therefor by either party hereto."

The decree also provides that the $30 paid by the defendant to the clerk shall be turned over to the plaintiff to be used in payment of taxes on the premises and the balance applied by the plaintiff on the payment of interest on the judgment. The order provides that "the defendant, Arthur Nagle, is to keep the buildings on the property insured in a reliable insurance company and that the policy of insurance shall provide that in the event of loss or damage, any sum recovered thereunder shall be paid to the Clerk of the Court for the plaintiff, to be applied upon the judgment held by the plaintiff, and that the defendants shall keep the buildings and fences in a reasonably good state of repair during the period of redemption."

It is contended by appellant that the facts in this case bring it within the holdings of this court in the following cases: Federal Land Bank of Omaha v. Wilmarth, 218 Iowa 339, 252 N. W. 507, 514, 94 A. L. R. 1338; Reed v. Snow, 218 Iowa 1165, 254 N. W. 800, 802; McDonald v. Ferring, 218 Iowa 593, 255 N. W. 719; and Butenschoen v. Frye, 219 Iowa 570, 258 N. W. 769. We have read these cases in the light of the evidence and findings of the court in the instant case and the facts in each of said cases are plainly distinguishable from the facts before the court in the case at bar.

In the Wilmarth case, supra, the value of the farm was estimated at $10,000, while the indebtedness against the same was in the neighborhood of $25,000. There was a concession that the appellant was insolvent. While the appellant had himself been occupying the mortgaged farm originally, during the year 1932, when he

was defaulting under his mortgage, he left the premises, turned the same over to his son who was permitted to sublet the premises to various tenants, and the evidence showed that he was assisting his son in preventing any of the rents and profits being applied upon the mortgaged indebtedness. It was found by the district court that the appellant had lost hope and apparently in effect had abandoned the farm, and it was the holding of this court, "Clearly the appellant has no prospect of refinancing or funding the indebtedness within the moratorium period," and that under all the circumstances in that case the district court did not abuse its limited discretion under the statute in refusing to grant the continuance.

In the case of Reed v. Snow, supra, there was a specific finding by the court that no homestead right was involved and the defendants were not occupying any part of the property as a residence, but it was purely a business property. The court specifically found in that case that the defendants were insolvent, had unpaid judgments outstanding against them, the property was going to waste, and this court in that case specifically found that "the defendants are and have been for some time past hopelessly involved financially, and that the equity of the whole situation is that if the continuance is granted it will not in any way relieve the defendants from their financial distress but will work immeasurably to the disadvantage of the plaintiff."

In the Ferring case, supra, the defendants were not in possession. They had leased the premises and assigned the lease before the commencement of the foreclosure proceeding. That case, however, turned upon the point that the lower court was without jurisdiction to grant the continuance without complying with other provisions of the statute with reference to rents, income, taxes, repairs, etc., contained in section 2 of said act (Acts 45th General Assembly, chapter 182).

The facts in the Frye case are entirely different from the facts in any of these other cases. The defendant in the Frye case was not in financial distress. He simply refused to use any of his other property as security for the purpose of enabling him to obtain funds with which to meet the mortgage indebtedness due the plaintiff, although he had unincumbered property of the value of over $100,000. In the Minnesota case cited by appellant, Rodine v. Drew, 259 N. W. 699, the defendants were hopelessly insolvent. There was no possibility under the facts in that case of the defendants reducing the

indebtedness, paying the same, or refinancing within the period of the extension.

We have in the case before this court an entirely different set of facts. In the first place, it involves the homestead, not only of the defendant and his wife, but also of the minor children who are the owners of an undivided two-thirds interest in the property. It cannot be said under the evidence in this case that there is no possibility that these owners will not be able to either sell this farm at a price above the mortgage indebtedness or refinance the same within the period of the extension. Prices of farm products have materially increased since this case was tried. It is impossible for this court or any other court to definitely foretell the future in respect to economic conditions. These people are in distress. It is true they failed to pay all their rent for the year 1934. Very few tenants in southern Iowa were able to make payment in full of their rent for the year 1934 because of the almost total crop failure. It would seem inequitable to deprive the defendants of their home and future prospects, just at a time when the abundant seasonable rains hold out the alluring hope of bountiful crops for this year, and just when farm values under the natural course of events under such circumstances would naturally tend upward. While $30 per month is a small rental for this good eighty acres of land, the court was faced with a situation, due to the last year's drought, which no doubt prompted him to leave something out of the income at present with which to enable the defendants to purchase feed and seed, that they might carry on their farming and dairy operations. A saving clause is contained in the decree which enables the court, if conditions improve, to increase this rental. It must not be overlooked that in addition to the $30 per month the order of the court requires the defendants to keep the premises insured for the benefit of the judgment creditor and to keep the buildings and fences on the premises in a reasonable state of repair, all of which is ordinarily deducted from the share of the rent going to the mortgage holder. The court's order in respect to the rents, etc., while not in strict accord with section 2 of the statute, does in substance and effect meet the requirements of the law.

We are unable to see under the record in this case wherein the court abused its discretion in granting the extension, and the order of the court is accordingly affirmed.—Affirmed.

All Justices concur.