FIRST TRUST JOINT STOCK LAND BANK of Chicago, Appellant, v. J. J. RIDDLE et al., Appellees.

No. 43438.

JUNE 19, 1936.

Shull & Stilwill and M. P. Lawless, for appellant.

Underhill & Miller, for appellees.

RICHARDS, J.—In this action to foreclose a real estate mortgage the defendant owner made application for a continuance until March 1, 1937, pursuant to the provisions of Chapter 115 of the Acts of the Forty-sixth General Assembly. Plaintiff resisted the application. From an order granting the continuance plaintiff has appealed. The question presented is whether plaintiff showed such good cause to the contrary that the court erred in granting the application.

Plaintiff in argument claims that the court did so err because of an alleged showing by plaintiff of the following facts: that defendant owner was not in financial distress, but solvent and a man of substantial wealth above his exemptions; that the mortgaged premises did not include defendant's homestead; that defendant owner was not engaged in farming; that defendant owner was not personally liable on the debt; that defendant had no equity in the real estate, the value being substantially less than the amount of plaintiff's claim.

 The purported facts that defendant owner was not in financial distress, but solvent, and a man of substantial wealth above his exemptions, do not seem to have been alleged in plaintiff's resistance, nor made a part of the issues submitted to the district court. On the contrary in the lower court plaintiff was claiming in his resistance that defendant was unable to finance the mortgaged premises from sources other than the Federal Land Bank of Omaha and that the amount said land bank would loan would be insufficient to refinance the claim of plaintiff, and as another ground of resistance plaintiff alleged that the defendant had stated no facts showing his ability to refinance during the requested continuance. Such being the record it follows that the claim now made respecting defendant being a man of wealth, not in financial distress, cannot be considered because raised for the first time on appeal. But had the question been before the district court, we are satisfied there was no

such showing concerning defendant's financial condition as to bring this case within the rule announced in Butenschoen v. Frye, 219 Iowa 570, 258 N. W. 769, relied on by plaintiff. While defendant may have been solvent, yet the character of his assets and the extent of his liabilities, including guarantees of obligations of others, resulted in a condition of financial distress, when the large sum due on this mortgage is taken into consideration.

As to the fact that plaintiff did not occupy the mortgaged premises as a homestead, the statute under consideration contains no distinctions in its application to homestead and nonhomestead property. The matter of the real estate being or containing a homestead is only one of the fact elements pertaining to the mortgaged premises that previous opinions of this court have taken into consideration. Anderson v. Fall, 221 Iowa 24, 265 N. W. 165.

It is true that defendant owner was not himself physically farming the mortgaged premises. But in determining whether such fact is or is not good cause for refusing relief the purposes of the statute must be kept in mind, and especially the fact that under the statute the granting of the continuance is to be the rule. Reed v. Snow, 218 Iowa 1165, 254 N. W. 800. We find nothing in the act indicating any possible legislative intent that its purposes extend solely to owners personally farming their mortgaged premises.

Defendant purchased the mortgaged premises on May 1, 1930, paying approximately $7,000, and accepted title subject to the mortgage in suit. Plaintiff says the manner of acquiring title, that is the fact that defendant did not assume payment of the mortgage, deprives him of the benefits of the Act. We find no substance to this contention, in view of the inclusive language of the Act and the evident purpose of the legislature to relieve all property owners in financial distress where there is a reasonable possibility of their being able to save their mortgaged property within the time provided by the statute. The conclusion is also sustained by the history of the Act under consideration. Reference is to the fact that after the above mentioned Chapter 115 had been enacted, providing that any owner or owners, defendants, might make application for a continuance, the same legislature amended the chapter by making the additional provision that the persons liable on the mortgage also

might make such application (Acts 46 G. A., ch. 116, section 1). The statute as amended provided that either the owner, or the persons liable on the mortgage, might make the application. Evidently in enacting the amendment the legislature realized that in Chapter 115 the right to apply for a continuance extended only to the owners of the mortgaged premises, and that if such owner did not happen to be the person who had executed the obligation the right should be further extended to include those who were personally liable upon the mortgage. The evident intent of the Act and the amendment was not to limit the persons to be relieved but rather to extend its application to all persons financially distressed whether as owners or as obligors in their personal capacities.

■■■ Coming to plaintiff's claim that there is no equity in the security, because the value is substantially less than plaintiff's claim, the record discloses the following pertinent facts. On January 2, 1925, the mortgage in suit originated. The amount loaned was $20,000, bearing 5½ per cent interest from November 1, 1924. On May 1, 1930, the defendant acquired the mortgaged premises for approximately $7,000, subject to the lien of the mortgage. The principal and interest were payable upon an amortization plan in sixty-nine semi-annual installments of $650 each. By reason of payments made the amount due upon the mortgage had been reduced on May 1, 1933, to approximately $18,500. Defendant was unable to pay the $650 installment due May 1, 1933, and also failed to pay the second installment of 1932 taxes. Plaintiff declared the entire indebtedness due and filed its foreclosure petition on October 21, 1933. The court granted a continuance of the cause to March 1, 1935, under the provisions of Chapter 182, Acts of the Forty-fifth General Assembly, appointing a receiver who collected the rents and profits beginning March 1, 1934. Upon the granting of the continuance to March 1, 1937, the same receiver continued in possession. There is no record before us from which can be ascertained the amounts realized from the rents and profits that accrued during the receivership.

With respect to the market value of the security at time of the trial in September 1935, the evidence discloses that the mortgaged premises constitute an average hilly farm of its locality, 326 acres in extent, of which 300 acres are tillable. During the 1935 season the farm was largely devoted to raising corn. Plain-

tiff's witnesses testify that the market value of lands such as are involved in this case, in the same vicinity, advanced from 1933 to 1934 about fifteen per cent, and from 1934 to 1935 about ten per cent. Plaintiff's witnesses testified that this particular farm was worth possibly $14,000 when the foreclosure was commenced, and was worth $16,000 to $18,150 in September 1935. Taking into consideration that $20,000 was loaned on this land in 1925, and that by reason of the amortization payments the indebtedness had been reduced to approximately $18,500 on May 1, 1933, and the fact that in 1930 defendant invested $7,000 in purchasing the equity of this land, and considering the evidence of plaintiff's witnesses, placing the admitted value of the land at the time of the trial but slightly below the amount claimed on the mortgage at time of the default in May 1933, and the record not disclosing the amount of income realized by the receiver, we cannot say that the district court abused its discretion, and should have refused the continuance on the ground that there was no possible equity in the land to be saved by defendant during the period of the continuance. In Augustana Pension and Aid Fund v. Nagle, 219 Iowa 1337, 1343, 261 N. W. 771, 774, it is said:

"It would seem inequitable to deprive the defendants of their home and future prospects, just at a time when the abundant seasonable rains hold out the alluring hope of bountiful crops for this year, and just when farm values under the natural course of events under such circumstances would naturally tend upward."

That opinion was written in June, 1935. The thought therein expressed is confirmed by plaintiff's own proof in this case of a natural rise of land values toward normal in the percentages pointed out. Plaintiff has not established at all certainly that during the period of the continuance defendant will be unable to liquidate the debt and save his land. The discretion to be exercised was of a limited nature. After reviewing these matters urged by plaintiff as "good cause", we are unable to find that there was an abuse of such discretion by the district court.—Affirmed.

DONEGAN, C. J., and PARSONS, KINTZINGER, ANDERSON, MITCHELL, STIGER, ALBERT, and HAMILTON, JJ., concur.