JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY of Boston, Appellant, v. ALMA SCHLOSSER et al., Appellees.

No. 43545.

OCTOBER 27, 1936.

Tinley, Mitchell, Ross & Everest and Morling & Morling, for appellant.

Dwight G. McCarty, for appellees, Alma Schlosser and the Olsons.

Joseph P. Hand, County Attorney, for appellee, Palo Alto County.

Franklin L. Pierce, for appellees, Land Bank Com'r and Federal Farm Mortgage Corporation.

PARSONS, C. J.—Plaintiff, on October 24, 1935, began this action for the foreclosure of a mortgage of $8,000, with interest at 5¼% per annum before maturity, and at 8% after maturity. The mortgage was given September 1, 1924, and covered 150 acres of Palo Alto County land and was due August 20, 1929, with principal, delinquent interest, and taxes paid by the mortgage holder, amounting to $11,240.85 on October 16, 1935.

At the time of the giving of the mortgage, the land stood in the name of George Schlosser, and the mortgage was signed by him and his wife, Alma Schlosser, who is principal defendant herein, and the land has been owned by George Schlosser or his

wife for more than forty-five years. It was occupied by them for about thirty years, when they moved off and went to live in Ruthven, where they resided ever since until the death of George Schlosser, and Alma Schlosser, his widow, has since resided there, so that for fifteen years this land has not been the homestead. There are about 80 acres of tillable land on the place, the balance being slough, pasture, low and wet, and not tillable,—in wet seasons almost worthless. The tillable soil in some parts is quite sandy, subject to drying out in ordinary seasons. The only witness fixing the value of the tract as a whole, estimated it to be worth $8,800. The witnesses, practically all, fix the rental value of the farm as five hundred dollars per year.

A daughter of the Schlossers, May Olson, and her husband, have been farming the land right along for the last fifteen years; that is, ever since the mortgagor and his wife moved off the place. On December 28, 1934, a lease was made to the Olsons with the rent reserved at $500 per year. The lease was assigned on the same date to Mrs. Frances Goff, another daughter of the Schlossers. Mrs. Schlosser testified that she owed Mrs. Goff five hundred dollars; claimed she borrowed it several years before to pay interest and taxes, and that the lease was assigned as security to pay this. It was recorded and she testified she does not owe Mrs. Goff anything now. This is urged as barring the right of defendants to a continuance. Prudential Ins. Co. v. Brennan, 218 Iowa 666, 252 N. W. 497, holds it does not, and with that decision we are content. This lease was for a term of three years, but was, subsequent to the commencement of this action, tendered into court in the pleading of the defendants, with the statement that the rent for the crop seasons March 1, 1935, to March 1, 1936, five hundred dollars, had been paid to Frances Goff, and that she had receipted for the rent in full for that year, and had released the assignment, and that she had no further interest therein. In the pleading it is said: ''tenders into court said lease and offers the same as the fair rental value of said premises commencing March 1, 1936.''

So it may be taken that the fair rental value of these premises was and is the sum of $500 per year. Mrs. Schlosser, since the death of her husband, has been living in Ruthven, and according to her testimony, she has been in straitened circumstances.

It also appears in the record that the 1931 taxes on the place were delinquent and were of the sum of $186.86. What the full amount of the taxes were for 1932 are not shown, but the plaintiff advanced to the defendants $89.30 for taxes. There have been no taxes paid by defendants since. The taxes for 1934 were $115.50.

In the ordinary course of foreclosure, without allowing for any delays, there will be accumulated in principal, interest and taxes, a total amount of indebtedness secured by this mortgage, in the sum of $12,800, and the foreclosure costs will amount to at least $200 more, so there will be $13,000 against this land if the foreclosure is granted now, before the sheriff will make a deed under the foreclosure and plaintiffs will get title.

Without in any way passing upon the question as to whether or not the assignment of the lease cuts any figure in this case, from the facts it is evident that this mortgage must take the land; that there is not the remotest chance that the mortgagor can ever pay the amount necessary to redeem; that at best, the holder of the mortgage, when it gets the land, having to hold it for even a short time, will have to charge off its books several thousand dollars on account of having taken this mortgage.

These statutes leave no justification for delay where their operation has this result. If there were any probability of the defendants being able to care for the obligation on the mortgage existing, we might be inclined to uphold the action of the district court in granting a continuance in this case. But there is no such probability. The question is here before us upon the application of the defendants for an extension of time under the moratorium act passed by the 46th General Assembly, chapter 115, found in the code of 1935 at page 1699.

The question arises, whether or not this whole record shows that there is no reasonable expectation that the purposes of the act will be accomplished by granting a continuance. In Federal Land Bank v. Wilmarth, 218 Iowa 339, at page 354, 252 N. W. 507, 514, 94 A. L. R. 1338, this court said:

"The purpose of the statute is to afford the owner of the land an opportunity to refinance or pay up the indebtedness and save his farm within the moratorium period. But the appellant, as already indicated, will not be in a position to pay the obligation and redeem the farm within the period of the moratorium.

He is hopelessly involved financially. Not only is the appellant insolvent, but he has no property with which to make any payment on the judgment aside from the mortgaged land. While the insolvency is not the deciding point, it is a material consideration. Clearly the appellant has no prospect of refinancing or funding the indebtedness within the moratorium period.''

This opinion was written by Judge Kindig, in the original moratorium case in this court, in which the court had under consideration the Moratorium Act, chapter 182 of the 45th General Assembly. In this case there is no prospect of the defendants ever redeeming the land involved, but on the contrary it shows that the longer it runs, the more the plaintiff will have to charge off. This is an impairment of the obligations of the contract.

There are outstanding judgment debts against the defendants of over $2,500, besides the amount owing to the plaintiff in this case. So on examination of all the testimony in the case, we think it shows the impossibility of financing the place so as to care for and take up the mortgage within the time continuance is asked for, or even up to the time in the regular course of procedure plaintiffs will obtain title to the property. The whole record shows this. It is only denying to the plaintiff what the mortgage gives it, and of no practical help to the defendants. Continuance in such cases should not be allowed; they are unjustifiable. Federal Land Bank v. Wilmarth, 218 Iowa 339, 252 N. W. 507, 94 A. L. R. 1338.

While it is true that, technically, insolvency is not proven as such, yet the record conclusively shows the facts we have herein set out. Of course, there is always a possibility of something happening. It is possible that a gold mine might be discovered on these premises, and there is about as much possibility of that happening, as that the premises may, within the period contemplated by the law, be sold for enough to clean up everything against it and let the plaintiff out whole. But that is such a remote contingency as not to justify the court in further delaying this case. So for the reasons herein expressed, the judgment of the lower court is reversed with instructions to proceed to the trial of the case as speedily as possible.—Reversed with instructions.

DONEGAN, ALBERT, HAMILTON, KINTZINGER, and RICHARDS, JJ., concur.