L. R. REPLOGLE et al., Appellants, v. HARLAN H. EBERT et al., Appellees.

No. 44000.

JUNE 15, 1937.

W. C. Ratcliff and R. J. Swanson, for appellants.

John J. Hess, for appellees.

HAMILTON, J.—The defendant, Harlan H. Ebert, is the owner of two farms situated in Montgomery County, Iowa, designated in the record as parcel 1 and parcel 2. Parcel 1 contains 105 acres and parcel 2 contains 160 acres. He acquired parcel 2 in 1914 at which time there was a mortgage indebtedness against it of $6,000. He inherited parcel 1 in 1927 at the time of his father's death, which was also incumbered. He has renewed and increased this incumbrance to $8,400. Likewise, the mortgage on parcel 2 has been increased to $10,000. On top of both of these mortgages he placed a blanket second mortgage over both tracts of real estate for $9,000, which is the mortgage involved in this foreclosure suit. The $8,400 mortgage on parcel 1 has been foreclosed and the land was sold on December 2, 1936, under special execution for the full amount of principal, interest and costs, the total sum being $8,585.33, the mortgagee, Mabel Peters, being the purchaser. Likewise, the $10,000 first mortgage on parcel 2, held by the Federal Land Bank of Omaha is in process of foreclosure, the amount due thereon as of date November 12, 1936, being $11, 226.94. There are delinquent taxes on the two tracts of $500, which is in addition to the 1936 taxes, the amount of which is not shown. The $9,000 blanket second mortgage in suit, covering both tracts, was given to the National Bank of Red Oak, Iowa, which bank went through the familiar process of reorganization, and as a part of such reorganization certain of the assets were placed in trust for the benefit of the depositors and this $9,000 mortgage in suit constitutes one of the trusteed assets, the appellants being the trustees of said trusteed funds.

There was due on this mortgage as of date December 14, 1936, $11,049.75, with 7 per cent interest from said date, plus costs of the foreclosure, and any additional accrued and accruing interest. Parcel 1 is valued at $120 to $125 per acre, parcel 2 at $70 to $75 per acre. On November 25, 1936, defendant Harlan H. Ebert was adjudged a bankrupt and this proceeding in bank-

ruptcy is still pending, the record disclosing that both of these farms were rejected by the bankruptcy court as burdensome assets. Defendant also had personal property valued at $4,500, including his exempt property, all of which was covered by a chattel mortgage held by the plaintiffs and appellants to secure another $9,000 note not otherwise secured, which chattel mortgage was also foreclosed, the judgment secured being in the amount of $9,475 with 7 per cent interest from February 8, 1937, and costs amounting to $153. The record shows that this personal property was advertised for sale at sheriff's sale on March 7, 1937, and hence it is fair to assume this sale has already taken place. In addition to this mortgaged personal property sold under foreclosure, defendant has a tractor outfit, which is also mortgaged, and is also the owner of a team of horses.

 It is the contention of appellants that "the trial court erred and abused his discretion in granting a continuance of this cause for the reason that the defendants are hopelessly insolvent and cannot redeem or refinance the real estate within the period of the moratorium." As bearing on this question of the defendants' ability to refinance, it should be stated that in addition to the two parcels of land owned by defendant, which we have already referred to, he is farming along with this land an additional 575 acres, making in all 840 acres which the defendant is undertaking to operate. The defendant frankly admits that he has no means of refinancing or raising money with which to redeem from the foreclosure sale, pay taxes and interest, except what he might earn or produce in his farming operations. He also admits that his wife, Mary K. Ebert, has no property, income or means with which to pay any of the mortgages. A recapitulation of the figures discloses that the total value of the real estate of parcels 1 and 2 is $25,125.00, that the total indebtedness thereon amounts to $31,372.02, which shows a deficit of $6,247.02 between the value of the land and the amount of the indebtedness. The carrying charges or interest figured according to the terms of the two first mortgages, plus taxes, estimated at $1.00 per acre per year, amount to $1,764.92. Adding to the above figures 7 per cent interest on plaintiffs' mortgage in the instant case for one year, brings the total carrying charges up to $2,538.40, which amounts to approximately $9.50 per acre per year on these two parcels of real estate. This does not take into account the indebtedness on the tractor outfit, the amount

of which is not shown. Thus it is revealed without any question that the defendants are at this time hopelessly insolvent, and the mortgage security is wholly inadequate. No attempt was made to show that the defendants could by additional loans upon the real estate acquire funds with which to meet this indebtedness. This, of course, would be an impossibility, viewed from any rational standpoint, and we think it is likewise self-evident from these figures that insofar as the land itself is concerned the defendants have no prospect of refinancing or refunding the indebtedness within the moratorium period, and if we were to limit ourselves to the value of the land and the amount of the indebtedness upon parcels 1 and 2, taking into account the reasonable prospect of the crops to be produced thereon, we would be compelled to say that the living expenses of defendants and ordinary costs of managing and operating a farm, plus the total carrying charges against the land because of the indebtedness and the taxes would in all reasonable probability absorb the entire income and leave nothing to apply upon principal or to use by way of redemption of land sold under foreclosure. However, there is one other element to be considered. The record discloses that the defendant expects to operate 840 acres of land, and that he has arrangements with a neighbor to furnish him with sufficient funds to enable him to operate these farms for the two-year period of the moratorium. The statement is made in the argument of counsel for appellees that this land is situated in "the garden spot of the world." Of course, we realize that this is not evidence and that the world is a big place, and counsel for appellee is taking in a lot of territory. But appellants filed no reply argument, nor did they in any way refute this statement, so we may at least fairly assume that this is good farm land, and while the defendant seems to be stripped of all personal property except a tractor outfit and one team of horses, with the aid of the Good Samaritan neighbor he asserts that he will be able to operate these lands.

This being true (and it is not denied) the question is, May this court say that there is no prospect of the defendants redeeming at least a portion of the land? One of these farms includes the defendants' homestead, and it has been the homestead of these defendants and their predecessors for many years, and we may also reasonably assume that every effort will be put forth to save at least the homestead tract. We think the court

must take judicial notice of the abundant seasonable rainfall and the favorable seasonable weather now prevalent throughout most of this state, which is indicative of a favorable crop season. What the outcome may be no one is able to tell. With favorable conditions which may continue throughout the farming season, coupled with fair prices for farm products which may prevail, is there not some reasonable prospect that the defendant from 840 acres of good farm land properly tilled would be able to acquire sufficient funds to enable him to at least save a portion of his holdings within the period of the moratorium? In other words, he will have the renter's share from 840 acres of real estate, some portion of which, of course, will be in pasture. How much of the entire tract of 840 acres is in pasture land is not shown. True, the prospects are not bright, but it must be said to the credit of the defendant that he is making a tremendous effort in undertaking to operate 840 acres of land. His family consists of himself and wife and seven children, the youngest child being six and the eldest nineteen, all girls except an eight year old boy. The defendant states: ''I have heretofore farmed both of the above tracts of land, and in addition thereto other land, about 840 acres altogether. I am making this application for the purpose of enabling me to continue the farming of this land. I expect to operate this land and farm it during this continued period the same as I have in the past. I have made arrangements to operate these farms the coming year and the year following, and this application or motion for continuance is made in good faith and for the purpose of enabling me to continue to farm this land.'' The evidence discloses that because of the drought, little was produced by the defendant on these farms the last two years, a situation over which neither of the parties to this litigation had any control. Despite these continued failures the defendant with Spartan-like fortitude is again preparing to plant and seed and till the soil as thousands of other Iowa farmers, hopefully and earnestly trusting in an all-wise Providence to furnish the increase. It is not for us to say that such faith and trust in this year of our Lord, 1937, will be misplaced. Appellants make the further point that the application under the present statute must be made in good faith, and it is their contention that an application cannot be made in good faith when there is no showing of probability whatsoever of paying off, refinancing or redeeming said property. Assuming this is a cor-

rect statement, are we able to say under this record that with a favorable farm season there is no probability whatsoever of this defendant being able to save at least a portion of his holdings?

■■ Counsel for appellees calls attention in argument to the new section added to the present moratorium act, which reads: "Section 3. A showing of present insolvency of the mortgagor or mortgagors and/or present inadequacy of the security shall in themselves not be sufficient to constitute good cause for refusal to grant a continuance within the meaning of section 2 of this act," and apparently construes the language of this section 3 as making it obligatory upon the court to grant a continuance, regardless of the future prospects of the debtor to refinance his indebtedness within the period of the moratorium law. We are not inclined to look with favor upon this interpretation. The new section adds little, if anything, to the present judicial pronouncements of this court, an examination of which will disclose that the court has never held that present insolvency or present inadequacy of the security in and of themselves a sufficient reason for refusing a continuance. In the case of Federal Land Bank v. Wilmarth, 218 Iowa 339, 354, 252 N. W. 507, 514, 94 A. L. R. 1338, the leading case on this subject, this court said:

"The purpose of the statute is to afford the owner of the land an opportunity to refinance or pay up the indebtedness and save his farm within the moratorium period."

And in the case of Reed v. Snow, 218 Iowa 1165, 1168, 254 N. W. 800, 801, the court again said:

"We think the purpose of the statute was for the relief of debtors that were in financial distress and where there was a possibility of their being able to save their property within the time provided by the statute. However, the purpose and intent of this act, as we view it, was not to give this relief to those owners of property who are hopelessly insolvent and there could be no possible hope for them *in the future*." (Italics ours.)

And in the case of John Hancock Mutual Life Ins. Co. v. Schlosser, 222 Iowa 447, 450, 269 N. W. 435, 436, the court again said:

" 'Not only is the appellant insolvent, but he has no property with which to make any payment on the judgment aside from

the mortgaged land. While the insolvency is not the deciding point, it is a material consideration. Clearly the appellant has no prospect of refinancing or funding the indebtedness within the moratorium period.'* * * In this case there is no prospect of the defendants ever redeeming the land involved, but on the contrary it shows that the longer it runs, the more the plaintiff will have to charge off.''

We can see nothing in section 3 above quoted which requires us to depart from the foregoing pronouncements. The Wilmarth case also announced the rule that the district court has but a limited discretion in determining what shall or shall not be good cause for refusing the continuance, that the granting of the continuance is to be the rule under the statute and that if the general rule is not to apply, the mortgagee must show good cause as to why the statute should not govern. This is still the rule. The burden was on the appellants. On the whole record we are inclined to agree with the trial court, and the case must accordingly be affirmed.—Affirmed.

ANDERSON, SAGER, STIGER, KINTZINGER, and DONEGAN, JJ., concur.

MITCHELL, J., concurs in result.

RICHARDS, C. J., takes no part.