FIRST TRUST JOINT STOCK LAND BANK of Chicago, Appellant, v. R. B. BAXTER et al., Appellees.

FIRST TRUST JOINT STOCK LAND BANK of Chicago, Appellant, v. W. G. BAXTER et al., Appellees.

No. 44170.

APRIL 5, 1938.

Shull & Stilwill and M. P. Lawless, for appellant.

A. G. Hess, for appellees.

DONEGAN, J.—This case involves two separate foreclosure actions of real estate mortgages, on separate tracts of land, brought by the plaintiff against the defendants, and comes to us on an appeal by the plaintiff from orders of continuance entered in said actions under the provisions of Senate File 15 (chapter 80) of the Acts of the Forty-seventh General Assembly. There is practically no dispute in the facts which are substantially as follows:

On May 2, 1924, R. B. Baxter and Rita Baxter, husband and wife, executed a mortgage for $38,000 on approximately 560 acres of land in Woodbury county, Iowa, to the First Trust Joint Stock Land Bank of Chicago. On February 21, 1924, W. G. Baxter and Lucille Baxter, husband and wife, executed a mortgage for $5,000 on approximately 80 acres of land in

Woodbury county, Iowa, to the First Trust Joint Stock Land Bank of Chicago. Neither mortgage covered any land included in the other, but the two tracts adjoined. Each of these mortgages was payable on an amortization plan under which payments were to be made semiannually, and provided that taxes against the land should be paid by the owners of the land before they became delinquent. The mortgages also provided that a failure to pay the installments when due or the taxes before they became delinquent would cause the entire principal sum, with interest, to become due and payable immediately. In February, 1930, under a receivership of Baxter Brothers & Company, all of the land was sold to Chas. Neal, and deeds were delivered to him on February 26, 1930. Both the contract of sale and the deeds provided, as a part of the consideration therefor, that Neal assumed and agreed to pay the notes secured by the mortgages above mentioned.

On November 15, 1934, the plaintiff, the First Trust Joint Stock Land Bank of Chicago, began two separate actions to foreclose these two mortgages, because of the failure of Neal to pay the installments on the mortgages, before they became due, and the taxes against the mortgaged land, before such taxes became delinquent. The action to foreclose the mortgage on the 560 acres of land asked for judgment against all of the defendants, except Woodbury county, Iowa, for the principal sum due on the promissory note secured by said mortgage, in the sum of $36,608.81, with interest thereon at 8 per cent per annum from November 1, 1931, and $1,596.53 advanced to pay the taxes for the years 1930 and 1931, with interest thereon at the rate of 8 per cent per annum from the date of such payment, as provided in said mortgage, and for costs. The action to foreclose the mortgage on the 80 acres of land asked for judgment against all of the defendants, except Woodbury county, Iowa, in the sum of $4,758.76, with interest thereon at 8 per cent per annum from September 1, 1932, and $285.41 advanced to pay the taxes for the year 1930, with interest thereon at the rate of 8 per cent per annum from the date of such payment, as provided by the mortgage, and for costs.

On January 28, 1935, the defendant, Chas. Neal, filed motions for continuance in both of said foreclosure actions. These motions were identical and asked that the trial in these actions be continued in accordance with the provisions of chapter

182 of the laws of the Forty-fifth General Assembly. On March 27, 1935, the plaintiff filed resistance to each of said motions, and on April 10, 1935, both of said causes were ordered continued to March 1, 1937.

Following the enactment of Senate File 15 (chapter 80) of the Acts of the Forty-seventh General Assembly, the defendant, Neal, did not amend or substitute his motions and, under the provisions of that act, the motions for continuance which he had filed in 1935 stood as refiled, asking for a continuance of the said foreclosure actions to March 1, 1939. To these motions, as refiled, the plaintiff filed a resistance in each case. These resistances were identical and were based upon several separate grounds. A hearing was had on these motions and the resistances thereto, a stipulation as to certain facts was filed, and evidence taken as to other facts. At the conclusion of said hearing the trial court entered its orders overruling the resistances and continuing the cases to March 1, 1939. From these orders in each of the foreclosure actions, the plaintiff appeals.

The evidence at the hearing, in addition to the stipulation of the parties, consisted of the testimony of the defendant Chas. Neal, owner of the land, and of H. H. James, local representative of the plaintiff at Sioux City, Iowa. Both of these witnesses were called in behalf of the plaintiff, and no evidence was introduced in behalf of the defendants. The stipulation of the parties agreed that the two foreclosure actions should be consolidated for the purpose of trial and appeal, and that the record made should stand in so far as applicable to both cases. Some of the facts already stated were set out in the stipulation, and it was further stipulated that, at the time the foreclosure action on the 560 acres was commenced on November 15, 1934, the indebtedness against said 560 acres was $36,608.81, with interest thereon at 8 per cent per annum from November 1, 1931, and the sum of $1,596.53 taxes for 1930 and 1931 paid by plaintiff, with interest thereon from December 7, 1931, at the rate of 8 per cent per annum, as stated in the petition; that, subsequent to the commencement of that action, on March 5, 1937, plaintiff had paid the sum of $2,803.29 to redeem both tracts from tax sales for the years 1932 to 1935, inclusive, and that the taxes for 1936 on both tracts, in the sum of $809.30, had not been paid; that the amount of indebtedness against the 80 acres at

the time of the commencement of the foreclosure on November 15, 1934, was $4,758.76, with interest thereon from September 1, 1931, at the rate of 8 per cent per annum, and the sum of $285.41 paid by plaintiff on December 7, 1931, to cover taxes for 1930; and that the rents for both tracts for the two years, March 1, 1935, to March 1, 1937, had been collected by a receiver appointed by the court, and that, after deducting expenses, the net amount of such rents applied to the indebtedness was $689.68. According to this stipulation, the rent for the lands included in both actions for the year March 1, 1935, to March 1, 1936, had been paid in full; and, under the leases for March 1, 1936, to March 1, 1937, the share rents had been paid in full, but that cash rent in the sum of $360 was due and owing. The order entered by the court directed the receiver to accept $180 in full of this claim for cash rent, and this latter sum appears to have been paid and credited on the indebtedness.

The testimony of the defendant Neal showed that the purchase price of the combined 560- and 80-acre tracts had involved the payment of $7,000 in cash, in addition to the amount of the mortgages; that he took possession of all of the land on March 1, 1930; that he did not own any other real estate and would have to depend upon this land to pull him through this indebtedness; that there are 626 acres in the entire tract, including both the farm described as containing 560 acres and the one described as containing 80 acres, and that he looked upon it as a single farm and occupied and worked it as such; that he is indebted in the sum of $2,000 for a doctor bill for his little girl, who has been at a hospital for 3½ years, but has no other debts; that he has a family of ten children, 5 girls and 5 boys, ranging in age from 10 to 26 years; that all of them are at home and work on the farm; that he owns farm equipment sufficient for the 626 acres and has 40 head of cattle and 25 head of hogs, all free from mortgage; that his wife has no interest in the property except her dower interest; that, in the entire tract there are about 200 acres of pasture and hay land, none of which can be farmed, except a few acres along a creek, because it is too rough; that the rest of the acreage, except roads and building sites, is under cultivation, but that all the farm is rough and hilly land; that he has sufficient help to farm the land without hiring help; that a gravel road to Sioux City runs through the land; that a part of it is in an independent school district and the taxes are

high; that there is a fair house on the farm, but outside of the house you could not brag on the other improvements; that he did not get a crop on the land of any kind during the last year (March 1, 1936, to March 1, 1937); that there was no feed in the pasture after July 1st; that the land is not worth the mortgage at the present time; that it is worth a good deal less than the mortgage; that there is lots of poor land on it, lots poorer than he thought it was at the time he bought it; that the Federal Land Bank agreed to loan him $27,500 on the whole farm about two years before; that he thought this was a fair loan on it; and that you could not get a mortgage on the land for enough to pay for it.

The witness, James, testified that the farm was what would be termed rolling to rough; that a full quarter section is so rough you could not farm it, except along a ditch, and that this was in pasture; that the house and part of the buildings are on one side of a road and part on the other; that the farm is like all in that particular territory, rolling and rough, rather thin on the hills; that a fair and reasonable value on the land is between $40 and $50 an acre; that there was nothing in the way of corn or oats raised on the land last year, the oats being cut before harvesting; that there is approximately 240 acres of cash rent ground, which includes alfalfa and all the pasture; that this was rented for $360 cash rent; that there is a little less than 400 acres of tillable ground, and that the roads should be taken out of that; that there are around 370 acres in crops; and that there are two houses and one set of other buildings, one house quite old and the other good, and the other buildings are fair.

The resistances filed by the plaintiff to the defendant's motions for continuance contained several grounds attacking the unconstitutionality and illegality of Senate File 15 of the Acts of the Forty-seventh General Assembly. The resistances also alleged that a continuance should not be granted because the facts connected with the foreclosure of the mortgages were such that the defendant was not entitled to a continuance under the provisions of the act itself. The only ground relied upon and argued by the appellant on this appeal is that upon which the latter part of its resistances was based. It is the contention of the appellant that the trial court should have sustained its resistances to the motions for continuance: (1) Because the

application is not in good faith, in that there is no showing of probability of paying off, refinancing, or redeeming the property within the period of the continuance; (2) because the applicant has no nonexempt personal property or private or independent resources, other than the land itself, with which to pay the indebtedness; and (3) because, considering the nature of the land itself, its value, and the amount required to pay the mortgages, with delinquent taxes and accrued interest during the term of the continuances, there is no probability that the land can be sold or the loans refinanced for a sufficient amount to pay the indebtedness due on the mortgages and the accruing interest and taxes, within the period of the continuance. While the appellee, Neal, was represented by counsel at the hearing on the applications for continuance, no evidence on his behalf was presented at such hearing and no appearance has been made for him or any of the appellees on this appeal. We are, therefore, without the benefit of any brief or argument for the appellees in reaching our decision on the proposition here presented by the appellant.

As will appear from an examination of the matters presented by the stipulation and the testimony of the witnesses, there is no dispute as to any of the facts in this case. From a consideration of the facts thus presented, it appears that the land here in question was purchased by the defendant Neal, and deeds delivered to him in February, 1930; that the semiannual installments payable on the mortgage on the 560 acres have not been paid by the defendant since and including the installment due November 1, 1931, and that the semiannual installments payable on the mortgage on the 80 acres have not been paid by him since and including the installment due September 1, 1931; that no taxes on any of the land for the years 1930 to 1936, inclusive, have been paid by the defendant; that the only payment of any kind made on the mortgage indebtedness was the net amount of the rents, in the sum of $689.68, paid by Neal to the receiver for the two years from March 1, 1935, to March 1, 1937, inclusive; that at the time the hearing was had and the trial court's order entered, in April, 1937, the total amount due on the mortgage on the 560 acres was approximately $57,676.27, the total amount due on the mortgage on the 80 acres was approximately $6,859.82, taxes for 1936 on all the land, in the sum of $809.30, were still unpaid, and the

only credit to which defendant could make claim as against all this indebtedness was the net of the rentals for two years paid by him to the receiver, in the sum of $689.68. Adding the indebtedness due on both mortgages to the unpaid taxes, and deducting therefrom the credit arising out of the net rentals, leaves a balance of approximately $64,655.71 due and unpaid on both mortgages at the time of the hearing, April 12, 1937.

The only property owned by the defendant, other than the land itself, consisted of his farm equipment, a tractor, 40 head of cattle and 25 head of hogs. Allowing for other personal property not detailed in the evidence, and allowing a reasonable value for all the personal property, it is improbable that its total value would exceed $4,000 to $5,000. The defendant Neal is indebted on a doctor bill for $2,000. The value of the land, as shown by the testimony, is $40 to $50 an acre. Even if it be objected that this is the value placed on it by the plaintiff's field agent, there is nothing in the evidence to indicate that this value is much, if at all, too low. The defendant Neal did not place a specific value on the land; he testified that the total acreage in both tracts is 626 acres; that there are about 200 acres in pasture and hay land that cannot be farmed, because it is too rough; that the rest of the land is rough and hilly; that the land is worth a good deal less than the mortgage; that there is lots of poor land, lots poorer than he thought when he bought it; that it is worth a good deal less than the mortgage; that, after making two appraisements, the most the Federal Land Bank would loan on it was $27,500; that he felt that was a fair loan on it; and that the land would not stand the amount against it, either by sale or by mortgage.

Even if the total acreage be taken as 640, and Neal himself says it is only 626, the amount of the indebtedness against the land at the time of the hearing would require a value of more than $100 an acre, if it be paid by a sale of the land, and this does not include the costs of foreclosure. In any event, the evidence shows, without any possibility of doubt, that, at the time of the hearing, Neal's indebtedness was greatly in excess of the total value of all his property, and that he was clearly insolvent. True, section 3 of the act under which the continuance was granted provides that present insolvency of the mortgagor or present inadequacy of the security shall not be deemed sufficient to constitute good cause for refusal to grant a continuance; but,

as stated by this court in Replogle v. Ebert, 223 Iowa 1007, 1012, 274 N. W. 37, 40, this does not mean that it is obligatory upon the court to grant a continuance, regardless of the future prospects of the debtor to refinance his indebtedness within the period of the moratorium law, and, as there stated:

"The new section adds little, if anything, to the present judicial pronouncements of this court, an examination of which will disclose that the court has never held that present insolvency or present inadequacy of the security in and of themselves a sufficient reason for refusing a continuance."

It is also true that the provisions of the act under consideration, as well as the provisions of preceding moratorium acts, place upon the mortgagee the burden of showing cause 'why a continuance should not be granted, but this does not mean that he must show the absolute impossibility of the mortgagor paying the mortgage indebtedness, within the period of the moratorium. In all of the cases decided by this court, in which the question has been considered, we have held consistently that "the purpose of the statute is to afford the owner of the land an opportunity to refinance or pay up the indebtedness or save his farm within the moratorium period," and that a continuance should not be granted when the evidence shows that there is no prospect that this can be done. Federal Land Bank v. Wilmarth, 218 Iowa 339, 252 N. W. 507, 94 A. L. R. 1338; Reed v. Snow, 218 Iowa 1165, 254 N. W. 800; John Hancock Mutual Life Ins. Co. v. Schlosser, 222 Iowa 447, 269 N. W. 435; Replogle v. Ebert, 223 Iowa 1007, 274 N. W. 37.

In the case of John Hancock Mutual Life Ins. Co. v. Schlosser, 222 Iowa 447, loc. cit. 450, 269 N. W. 435, 436, this court said:

"In this case there is no prospect of the defendants ever redeeming the land involved, but on the contrary it shows that the longer it runs, the more the plaintiff will have to charge off. This is an impairment of the obligations of the contract. * * *

"It is only denying to the plaintiff what the mortgage gives it, and of no practical help to the defendants. Continuance in such cases should not be allowed."

We think the above statement in the Schlosser case is quite applicable to the facts in the instant case. Under the evidence

in the record, the indebtedness against the land exceeds $100 per acre; the value of the land is $50 per acre; the land is rough and hilly, the soil is light, and approximately 200 acres are not tillable; the owner paid no taxes on the land for the years 1930 to 1936, inclusive; from November 1, 1931, no payment was made on the mortgage indebtedness against the 560 acres, and from September 1, 1931, no payment was made on the mortgage indebtedness against the 80 acres, other than the $689.68 of net rents for the two years preceding March 1, 1937, applied to such indebtedness by the receiver; the accruing interest on the indebtedness during the two years of the moratorium would amount to approximately $5,200, and the taxes on the land during that period would amount to approximately $1,600, and, if not paid, the indebtedness will be increased approximately $6,800 during the continuances. The history of this mortgage indebtedness during the seven years preceding the hearing certainly gives no reason to expect that it can be paid off within the period of the continuance.

Perhaps it is but fair to the defendant Neal to say that the failure to make payments on the mortgage indebtedness and taxes should not be ascribed to him, because such failure was probably due, in part at least, to crop failures, poor crops, and low prices for farm products. But, conceding all this, we still are unable to see that there is any prospect that the mortgage indebtedness here involved can or will be paid within the period of the continuance. The nature of this land is such that, even when crops generally are good, it cannot be expected that abundant crops will be grown on this land. In the two years of the extended moratorium period the defendant Neal would have to earn a net income of approximately $6,800 to pay accruing interest and taxes, in order to prevent the mortgage indebtedness from increasing. Not only this, the land would have to increase in value to such an extent that, before the end of the moratorium period, it can be sold or the loans refinanced and the indebtedness paid off. This means that, if the land is sold, its value will have to be doubled, and, if the loans are refinanced, the value of the land will have to increase still more, in order to procure an amount sufficient to pay off the total indebtedness payable under the mortgages. We can see nothing in the evidence to indicate that there is even a remote prospect of such

a condition being brought about within the period of the continuance.

We are, therefore, constrained to hold that, in granting the continuances, the trial court was in error, and that the case must be, and is hereby, reversed.—Reversed.

STIGER, C. J., and ANDERSON, HAMILTON, and SAGER, JJ., concur.