PRUDENTIAL INSURANCE COMPANY of America, Appellee, v. AMANDA REDMOND et al., Appellants.

No. 44257.

MAY 3, 1938.

Oliver P. Bennett and Quintard Joyner, for appellee.

Prichard and Prichard, for appellants.

MILLER, J.—On August 6, 1926, appellants, as security for a loan of $14,000, executed and delivered to appellee their real estate mortgage covering approximately 154 acres of land situated in Monona County. Following appellants' default in the sum of $490 upon the interest due September 1, 1931, appellee, on August 22, 1932, filed its petition asking for the foreclosure of said mortgage. Two continuances of said cause were granted in accordance with the provisions of the Moratorium Acts of the 45th and 46th General assemblies, chapters 182, 115. On March 22, 1937, appellee filed a resistance to a further continuance of said cause to March 1, 1939, therein alleging, (1) that appellants have not done equity, (2) that they were delinquent in rent due, (3) that they were without finances to pay off the indebtedness, and (4) that the commitment made by the Federal Land Bank was for a smaller amount than was due appellee; and that therefore the granting of a further continuance would be unjust and inequitable. Following trial upon the application for further continuance, the trial court on June 7, 1937, ordered that the application for continuance be overruled and the continuance denied. Thereafter, on June 28, 1937, the trial court rendered a personal judgment against appellants in the sum of $19,697.59, and granted the foreclosure of appellee's mortgage. Appellants have appealed to this court from the order of June 7, 1937, denying the continuance, and likewise from the decree of foreclosure of June 28, 1937.

The evidence established without dispute that the land in controversy is situated about a mile and a half southeast of the town of Sloan, in Monona County; is intersected by paved highway U. S. 75, and railroad tracts immediately adjacent to each other, leaving about fourteen acres to the west of the railroad and highway; and is also intersected by two drainage ditches. The land is perfectly smooth, the soil being "Lamoure clay" or gumbo, and is all capable of cultivation, with the possible exception of 8 to 10 acres along a drainage ditch, which is inclined

to be wet during wet seasons. The improvements thereon consist of a large house, constructed at a cost of $25,000, a garage, a shed used as a barn, and a small corn crib. The improvements were all in good state of repair, except that the house needed some minor repairs, the cost of which would not exceed $20. Appellants are two elderly sisters who live on the premises in question, which premises, ever since the institution of the action, have been farmed by Clyde Redmond, a son of one of appellants. During the first two years involved herein large crops of corn and wheat were raised upon the land, which wheat sold for 30 cents and the corn for from 7 cents to 10 cents per bushel. The land was situated in the 1936 drought area, and that year produced only 50 bushels of corn. However, in that particular year there was practically no corn crop anywhere in the locality of this land. Since the granting of the first continuance all the proceeds from the land have been applied upon the indebtedness due appellee, which have been insufficient to pay the accumulating interest and the taxes upon the real estate. On September 1, 1931, the total amount owing was $14,490; whereas at the time of the rendition of the decree on June 28, 1937, after crediting all receipts, the actual amount owing was $19,697.59. An effort was made to refinance by procuring a loan from the Federal Land Bank, but the commitment was insufficient to pay the indebtedness owing appellee.

Appellee in the first and second grounds of its resistance claims that appellants have not done equity, and that they were delinquent as to rent due. The evidence in support of the claim as to rental delinquency establishes that there are 23 acres of pasture land that were rented for the farming year of 1936 at $2 per acre, and that no actual cash payment of that rent had been made. However, in that connection, the evidence establishes that Clyde Redmond, the tenant, during the year 1936, expended for threshing oats and wheat, and for sweet clover, timothy, and alfalfa seed, the approximate amount of $38, and likewise establishes that said expenditures were made by him in pursuance of an agreement with the clerk of courts as conservitor, to the effect that said payments were to be credited upon the cash rent. As a result thereof the only deficiency as to the cash rental amounts to $8.00. In view of that situation we are not impressed by the claim of appellee that there is such delinquency in the payment of cash rent as to warrant a finding that appellants

have not done equity. With the exception of that one matter, there is no showing whatever in the evidence other than that appellants and their tenant have accounted fully for all of the proceeds received from the land in question. As regards the contention of appellee that appellants have not done equity, we are unable to find anything in the record from which such contention could even be inferred, other than the claimed rent delinquency, and it is our opinion that the same is so insignificant that it does not warrant serious consideration.

As to the third contention of appellee, that appellants are without finances sufficient to pay off the indebtedness, the record is practically void as to the financial condition of appellants, and the only evidence that we are able to find that in any way touches upon the same is the fact that Amanda Redmond, one of the appellants, owns some land in Montana, that is free from debt, and from which she receives sufficient income to pay the taxes. The record fails to reveal the amount of value thereof, but regardless thereof, this sole item of evidence tends to negative rather than establish the contention of appellee. As a result the record is absolutely void of any evidence tending to establish this contention of appellee unless we are to infer from the fact that the value of the security is less than the amount of the indebtedness, that therefore appellants are without finances to pay their indebtedness. The value of the land involved, as established by appellee's testimony, was $16,000, resulting in the indebtedness exceeding the value of the security by the sum of $3,697.59. The result thereof is that we are confronted with a situation wherein no showing is made as to why a continuance should not be granted, other than a showing that the value of the security is inadequate as compared to the indebtedness owing appellee. It has been uniformly held by this court that the granting of a continuance should be the rule, and that a continuance should be granted unless good cause is shown to the contrary. In so holding this court has only followed the express mandate of the statute, and we have uniformly held that there is no burden upon the applicant to show good cause exists for the granting of the continuance, but that the burden of showing good cause why the continuance should not be granted is upon the party resisting. Appellee herein, in endeavoring to meet this burden, does so simply by showing the inadequacy of the security.

Appellee in its brief and argument cites a number of former opinions of this court, wherein language has been used to the effect that on account of insolvency of the mortgagor and inadequacy of the security, that there was no reasonable probability that the mortgagor would be able to pay off, refinance, or redeem the property in question; and wherein the applicant was therefore denied the benefits of the moratorium legislation. However, an examination of those cases reveals that they were all interpreting the moratorium legislation as enacted by the 45th and 46th General Assemblies. In the instant action we are concerned with chapter 80 of the Acts of the 47th General Assembly, of which chapter section 3 provides as follows:

"A showing of present insolvency of the mortgagor or mortgagors and/or present inadequacy of the security shall in themselves not be sufficient to constitute good cause for refusal to grant a continuance within the meaning of section 2 of this act."

Section 3, above set out, was not a part of the moratorium legislation enacted by either the 45th or 46th General Assemblies, but first became the law with the moratorium enactment of the 47th General Assembly. It appears to us that the legislature in incorporating section 3 in the present act did so for the very purpose of avoiding the interpretation heretofore placed by this court, to the effect that present insolvency and present inadequacy would result in a showing to the effect that there was no reasonable probability that the mortgagor would be able to pay off, refinance, or redeem.

This court in the case of Replogle v. Ebert, 223 Iowa 1007, 1010, 274 N. W. 37, 39, had occasion to deal with the present statute, and therein approved the action of the trial court in granting a continuance. Therein Justice Hamilton, in commenting upon the financial standing of the defendants and the value of the security, uses the following language:

"Thus it is revealed without any question that the defendants are at this time hopelessly insolvent, 'and the mortgage security is wholly inadequate."

Likewise, as is shown in that opinion, the indebtedness exceeded the value of the security in the total amount of $6,247.02. A comparison of the fact situation therein with the fact situation

in the instant case, reveals that in the Replogle case the inadequacy was nearly twice as large as in the instant case; that in the Replogle case it was established without question that the defendants were hopelessly insolvent; while in the instant case there is no showing of insolvency whatever, unless we are to infer insolvency from the fact that the security is inadequate. It is true that in the Replogle case showing is made to the effect that the defendants had leased additional land to that involved in the foreclosure, and therein the opinion refers to the probability of realizing sufficient from the leased land to permit the defendants to save at least a portion of their holdings. In the instant case appellants did not lease any additional land, but herein we are confronted with a record negativing insolvency upon the part of appellants, as compared with hopeless insolvency of the defendants in the Replogle case.

This court, in the case of Metropolitan Life Ins. Co. v. Henderson, 224 Iowa 1238, 1241, 278 N. W. 621, 623, again had occasion to deal with the present statute, and therein Justice Kintzinger uses the following language:

"It is evident from the wording of this statute that something more than insolvency or inadequacy of the security must be shown to justify a refusal to grant a continuance. The only showing made for refusing to grant the continuance in this case is that the security is not sufficiently adequate to meet the indebtedness and that appellees may be insolvent."

The fourth ground of appellee's resistance, that the commitment from the Federal Land Bank was for a smaller amount than was due appellee, cannot of itself be urged as good cause why the continuance should not be granted. This fact does nothing more than substantiate the contention of appellee that the present value of the security is inadequate. Having determined that such showing alone is insufficient under the statute to warrant the denial of a continuance, that contention is without merit.

In the Replogle case the following statement is made:

"Appellants make the further point that the application under the present statute must be made in good faith, and it is their contention that an application cannot be made in good faith when there is no showing of probability whatsoever of

paying off, refinancing, or redeeming said property. Assuming this is a correct statement, are we able to say under this record that with a favorable farm season there is no probability whatsoever of this defendant being able to save at least a portion of his holdings?''

The application of the above-quoted statement to the instant case again raises the inquiry whether under the record herein, where we are confronted with a showing of nothing except inadequacy of the security, are we able to say that there is no probability whatsoever of appellants being able to pay off, refinance, or redeem the property in question? It is our conclusion that with a fairly reasonable rise in the value of real estate, coupled with an abundant crop season, that there is such a probability. In addition thereto, there having been no showing of good cause as to why the continuance should not be granted, other than the fact that the security was inadequate, we reach the conclusion that the action of the trial court in denying the continuance to March 1, 1939, was erroneous, and that for that reason this cause must be reversed with instructions to the trial court to render decree in harmony herewith.

Appellee's motion to dismiss, which was ordered submitted with the case, is overruled.—Reversed and remanded.

MITCHELL, SAGER, RICHARDS, and KINTZINGER, JJ., concur.

STIGER, C. J., and DONEGAN, J., concur in result.