PRUDENTIAL INSURANCE COMPANY of America, Appellant, v. SIMEON J. HINTON, Appellee.

No. 44157.

DECEMBER 13, 1938.

Van Ness & Stillman, and Quintard Joyner, for appellant.

E. C. McMahon, for appellee.

DONEGAN, J.—This appeal is from an order of the district court of Palo Alto county granting a continuance of the period of redemption in a mortgage foreclosure action. The mortgage involved was for $17,000, payable October 1, 1929, with interest at five per cent per annum, payable semi-annually, and eight per cent per annum after maturity. Action in foreclosure was commenced in December, 1933, decree was entered on April 26, 1934, and on June 8, 1934, the farm involved was sold under special execution for $20,597.17, leaving a personal deficiency judgment of $1,000 against defendant. On April 20, 1935, an order was entered, on application of the defendant, extending the time of redemption to March 1, 1937, and on February 27, 1937, an application was made by the defendant for a further extension to March 1, 1939, under the provisions of Senate File 16, chap. 78, of the Acts of the Forty-seventh General Assembly. Resistance was filed to this application by the plaintiff on several grounds, and, following hearing on the application and resistance, on June 2, 1937, the district court entered an order granting the extension. From this order the plaintiff has appealed.

The principal ground upon which appellant relies is the disparity between the amount of the indebtedness and the value of the mortgaged property, and the insolvency of the appellee. Upon the hearing the appellant presented three witnesses, who estimated the value of the farm involved at from $14,000 to $14,500, whereas the indebtedness due on the mortgage at that time was something over $26,000. Although the appellee himself was a witness at the hearing, he placed no value on the land and called no other witnesses to do so. Appellee argues that, because he paid $60 per acre for the bare land in 1906, placed approximately $15,000 in buildings and improvements on it thereafter, and paid a drainage ditch tax of approximately $2,000 against it, the trial court could have found that the value of the land was in excess of the indebtedness against it, or, in any event, that the discrepancy was not such as to make it impossible for the appellee to pay off the indebtedness within the period of the moratorium.

In addition to the estimates of plaintiff's witnesses as to the value of the land, there was also evidence that, in November, 1933, the defendant made application to the Farm Loan Association for a loan of $17,500, which was rejected, and that, at that time, the Farm Loan Association refused to make a loan in

excess of $5,000. The evidence also shows that, because the farm had been rented by the appellee for the year 1934 to 1935 and the lease assigned by him, no rents were applied on the mortgage indebtedness, but that, during the year 1935 to 1936, the net rentals amounted to $735.63, while the interest on the judgment each year amounted to over $1,700. The evidence further shows that, by March 1, 1939, the interest on the judgment will amount to $8,540, and that, on that date, the total judgment, including interest, will be $29,890.45.

We see no reason for concluding that the value of the farm, at the time of the hearing, was greater than $14,500, the highest estimate placed upon it by appellant's witnesses. In view of the further evidence that the appellee has no other property, that he has not lived upon the land since prior to the commencement of the foreclosure action, and that there is no basis on which to predicate any substantial increase in the value of the land or any other source from which he could hope to pay the indebtedness, we think this case comes within the rule announced in Federal Land Bank of Omaha v. Wilmarth, 218 Iowa 339, 252 N. W. 507, 94 A. L. R. 1338. As stated in that case [page 354 of 218 Iowa, page 514 of 252 N. W.]:

"The purpose of the statute is to afford the owner of the land an opportunity to refinance or pay up the indebtedness and save his farm within the moratorium period. But the appellant, as already indicated, will not be in a position to pay the obligation and redeem the farm within the period of the moratorium. He is hopelessly involved financially. Not only is the appellant insolvent, but he has no property with which to make any payment on the judgment aside from the mortgaged land. While the insolvency is not the deciding point, it is a material consideraton. Clearly the appellant has no prospect of refinancing or funding the indebtedness within the moratorium period."

The doctrine announced in the Wilmarth case has been approved and followed by this court in Reed v. Snow, 218 Iowa 1165, 254 N. W. 800; Connecticut Mutual Life Ins. Co. v. Crozier, 221 Iowa 38, 265 N. W. 166; First Trust Joint Stock Land Bank of Chicago v. Lewis, 221 Iowa 437, 265 N. W. 141; First Trust Joint Stock Land Bank of Chicago v. Wylie, 221 Iowa 27, 265 N. W. 181; Miller v. Ellison, 221 Iowa 1174, 265 N. W. 908; John

Hancock Mut. Life Ins. Co. v. Schlosser, 222 Iowa 447, 269 N. W. 435; Mudra v. Brown, 222 Iowa 709, 269 N. W. 753.

It is argued that, even though the amount of the indebtedness was greatly in excess of the value of the land at the time of the hearing, and the appellee has no other property, this would be insufficient reason for refusing to grant the extension, because, under the provisions of the act under which the extension was asked and granted, the extension must be granted unless good cause is shown to the contrary, and "* * * a showing of present insolvency of the mortgagor or mortgagors and/or present inadequacy of the security shall not in themselves be sufficient to constitute good cause within the meaning of this act." In considering a similar provision in regard to the continuance of foreclosure actions, in Replogle v. Ebert, 223 Iowa 1007, l. c. 1012, 274 N. W. 37, l. c. 40, we said:

"Counsel for appellees calls attention in argument to the new section added to the present moratorium act, which reads: 'Section 3. A showing of present insolvency of the mortgagor or mortgagors and/or present inadequacy of the security shall in themselves not be sufficient to constitute good cause for refusal to grant a continuance within the meaning of section 2 of this act,' and apparently construes the language of this section 3 as making it obligatory upon the court to grant a continuance, regardless of the future prospects of the debtor to refinance his indebtedness within the period of the moratorium law. We are not inclined to look with favor upon this interpretation."

The statement in the Replogle case was followed and approved in First Trust Joint Stock Land Bank v. Baxter, 224 Iowa 1229, 279 N. W. 125, l. c. 129.

We find nothing in the facts of the instant case which distinguishes it in principle from Federal Land Bank v. Wilmarth, supra, and the other cases above referred to. The discrepancy between the amount of the indebtedness and the value of the land—the only source from which the indebtedness can be paid—is so excessive that we see no prospect of the appellee being able to pay off the mortgage indebtedness within the period of the moratorium, and we are constrained to hold that, in grant-

ing the continuance in this case, the trial court was in error.—Reversed.

SAGER, C. J., and MITCHELL, ANDERSON, HAMILTON, and STIGER, JJ., concur.