FIRST TRUST JOINT STOCK LAND BANK of Chicago, Appellant, v. CHARLES CLOSNER et al., Appellees.

No. 44107.

852

Whitney, Whitney & Stern, for appellant.

Bedell & Bedell, for appellees.

HAMILTON, J.—William Closner and wife, Susie Closner, made, executed, and delivered to the appellant their promissory note dated May 19, 1925, in the principal sum of $10,000, payable on an amortization plan in sixty-eight equal semi-annual installments of $325, and a final installment of $324.70. This note was secured by a mortgage upon 210.03 acres of land in Plymouth County, Iowa. Failing to pay the installment, which matured March 1, 1931, *appellant* elected to declare the entire remaining portion of the mortgage debt immediately due and payable, as provided by said mortgage, and commenced this action by filing its petition on the 27th day of April, 1931.

A default judgment and decree of foreclosure was rendered and entered of record on November 1, 1932, for the total amount of $11,324.30, which includes $268.77 paid out by plaintiff for delinquent taxes, insurance premium, and abstract fee. The premises were sold under special execution on December 13, 1932, to the appellant for $9,647.68, leaving a deficiency judgment of $2,000. After the sale, plaintiff filed a supplemental petition asking for the appointment of a receiver, to which mortgagors appeared and filed resistance. On May 18, 1933, supplemental decree was entered appointing R. R. Bedell, one of the attorneys for defendants, receiver. On application of the defendants, three successive orders have been entered, under each of the three moratorium acts, extending the period of redemption. The last order made May 11, 1937, extending the period of re-

demption to the 1st day of March, 1939, being the order appealed from herein.

Viewed from any reasonable angle, the debtor's outlook appears, from this record, hopeless. The accumulated interest on the sheriff's certificate of sale, up to June, 1937, amounted to $3,472.64, making the total amount then due on said sheriff's certificate of sale, $13,120.42. This, at the present rate of increase, will have reached the sum of over $15,000 by March 1, 1939.

During the entire extension period, the receiver has left the owners in possession, as tenants, and, presumably, the farm has been operated so as to produce as much as possible; during this time, after paying the cost of receivership and taxes, the sum of $1,114.55 is the amount paid upon the $2,000 deficiency judgment. All of this indebtedness is drawing eight per cent interest.

The reports of the receiver, with reference to the renting of the farm, disclose the following facts:

For the year ending March 1, 1934, he received rent as follows: 180 bu. of oats at thirty cents per bu., $54; 843 bu. of corn at forty-five cents per bu., $379.35; cash rent for pasture, $99; the complete total being $532.35. From this amount was paid, two years' premium on receiver's bond, $20; receiver's compensation, $75; taxes, $120.80; balance of $316.55 applied on deficiency judgment.

For the year ending March 1, 1935. Total amount of rent collected, $429.30; paid out, premium on bond and receiver's fee, $85; taxes for year of 1934, $101.32; applied on deficiency judgment, $240.

For the year ending March 1, 1936, during which time he sold corn at $1.12 per bu., total rent collected, $953.39; paid out for bond, $10; receiver's fee, $125; last half of 1935 taxes, $60.23 (first half $60.23, paid by mortgagee); applied on deficiency judgment, $558; this left a balance on hand of $200.16.

For the crop year ending March 1, 1937, the record indicates little rent collected because of crop failure, and, by order of court, cash rent of $99 for pasture land was ordered reduced to $49.50.

For the year ending March 1, 1938, nothing is shown except the leasing of the farm to appellees.

The only evidence as to the value of the land comes from

the fieldman of appellant, who places it at $50 per acre. In weighing this testimony, it is well to keep in mind that the appellant placed a loan of $10,000 on this land in 1925 and must have considered the land, at that time, worth in the neighborhood of $100 per acre. Prior to the time this last order was made, extending the period of redemption to March 1, 1939, mortgagors had had five years to refinance, during which time Federal Land Bank of Omaha was making loans, including commissioner's loans, yet, they have been unable, and apparently are still unable, to obtain sufficient funds to liquidate this debt. Under the present moratorium statutes the application must be made in good faith, which means with sincerity and honesty of purpose. It is fair to assume that appellees have no property subject to execution. Viewed from the most favorable circumstances possible, how can this court say that any further continuance will result in anything else, save the "putting off of the evil day" when these unfortunate debtors will be compelled to surrender their farm? This being true, under the interpretation which this court has placed and, of necessity, is compelled to place upon all of these moratorium statutes, namely, that the debtor may be able to refinance within the period of the moratorium and thus save his farm from execution sale, what justification is there, either in law or equity, for longer depriving the mortgagee of its security? This case falls squarely under the rule announced in Federal Land Bank v. Wilmarth, 218 Iowa 339, 252 N. W. 507, 94 A. L. R. 1338, wherein this court says [page 354 of 218 Iowa, page 514 of 252 N. W.] :

"The purpose of the statute is to afford the owner of the land an opportunity to refinance or pay up the indebtedness and save his farm within the moratorium period. But the appellant, as already indicated, will not be in a position to pay the obligation and redeem the farm within the period of the moratorium. He is hopelessly involved financially. Not only is the appellant insolvent, but he has no property with which to make any payment on the judgment aside from the mortgaged land. While the insolvency is not the deciding point, it is a material consideration. Clearly, the appellant has no prospect of refinancing or funding the indebtedness within the moratorium period."

And, also, in the case of John Hancock Mutual Life Insur-

ance Co. v. Schlosser, 222 Iowa 447, 269 N. W. 435, wherein we said [page 449 of 222 Iowa, page 436 of 269 N. W.] :

"* * * there is not the remotest chance that the mortgagor can ever pay the amount necessary to redeem; that at best, the holder of the mortgage, when it gets the land, having to hold it for even a short time, will have to charge off its books several thousand dollars on account of having taken this mortgage. These statutes leave no justification for delay where their operation has this result. If there were any probability of the defendants being able to care for the obligation on the mortgage existing, we might be inclined to uphold the action of the district court in granting a continuance in this case. But there is no such probability. * * * In this case there is no prospect of the defendants ever redeeming the land involved, but on the contrary it shows that the longer it runs, the more the plaintiff will have to charge off. * * * It is only denying to the plaintiff what the mortgage gives it, and of no practical help to the defendants. Continuance in such cases should not be allowed; they are unjustifiable."

Under such circumstances, it cannot be said that an application is made in good faith, and, under such a record, good cause is shown for denying further extension of the period of redemption. Disposition of the case, on this point, makes it unnecessary to pass on other propositions pointed out and argued in appellant's brief.

The order of the trial court is accordingly reversed and the cause is remanded for decree and judgment in accordance herewith.—Reversed and remanded.

SAGER, C. J., and DONEGAN, ANDERSON, and MITCHELL, JJ., concur.