**Bill H. MYERS, Appellant,**

v.

**Dennis M. SMITH and Karen Sue Smith, husband and wife, Appellees.**

No. 55651.

Supreme Court of Iowa.

July 3, 1973.

Newport, Newport & Wine, Davenport, for appellant.

Havercamp & Havercamp and Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, for appellees.

Heard before MOORE, C. J., and MASON, REES, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

The fighting issue in this case is whether the equitable "clean hands" doctrine

should control plaintiff's action for specific performance of an oral contract with defendant Dennis M. Smith (hereinafter defendant). Trial court applied the doctrine to deny plaintiff affirmative relief. Upon his appeal, we affirm.

About May 1, 1967, plaintiff and defendant orally contracted to incorporate under the name of Associate Investments, Inc. for the purpose of constructing, selling and renting homes or apartment buildings. They agreed to share equally in the expenses and ultimate profits or losses.

Plaintiff was president, and defendant an employee, of a construction company, Mid-Central Enterprises, Inc. In 1966 it was building between 20 and 25 houses per year. A lot was selected and plaintiff caused it to be purchased by Mid-Central. One half was sold off to a third party and plaintiff then caused his employer corporation to sell the other half to defendant. Plaintiff testified, "We wanted to take advantage of the $2500 lot, which was very rare at that time for a two-family dwelling, and also being in the construction business we felt we could construct the building without tying up a great deal of money." After construction of the duplex the real estate was to be conveyed to a corporation created by plaintiff and defendant.

There is no question but that Associate Investments, Inc. was formed. Each party contributed $25 to its funds. A certificate of incorporation was issued although no stock certificates were ever executed or delivered. The Secretary of State cancelled the corporate charter November 22, 1968. Plaintiff filed his petition in this cause December 6, 1968, praying the court require defendants to perform the contract by conveying the property to the corporation, issue certain corporate stock to plaintiff, account for the rents, and "for such other and further relief as may be equitable."

A $20,000 construction loan, to be followed by an amortization loan, was obtained at a bank upon an appraisal of $28,000 for the ultimate value of the property when the two-family unit was completed. Defendants (husband and wife) signed the mortgage instruments, incurring personal liability. Bank disbursements of the construction loan went through Mid-Central Enterprises. It ultimately incurred a deficiency resulting from its greater payments to subcontractors. After the duplex was built a bank account was activated and plaintiff contributed $105 which apparently was deposited in the account and used to pay interest. Other evidence plainly indicated plaintiff's active participation in the planning and construction of the duplex.

It is further undisputed a part of the equity which these parties claimed in the project resulted from nonpayment of the $2500 builder's profit which would ordinarily be paid to Mid-Central Enterprises. Clearly, the ultimate success of the venture contemplated by these parties was conditioned on plaintiff's ability to use the facilities, plans, credit and reputation of Mid-Central.

Defendant admits the real estate was to be conveyed to Associate Investments, Inc. upon completion of the project. He testified his refusal resulted from plaintiff's failure to carry out that part of the agreement which required him to convey a comparable property standing in his name. There was no corroborating evidence to show defendant contributed anything toward the construction of plaintiff's property which defendant claimed was to be transferred to the corporation. Trial court rightly rejected these contentions, holding defendant's failure to convey was more likely grounded on "the internal disruption at Mid-Central Enterprises."

Defendant's testimony touched on this unsurprising development occurring about the time the duplex was being completed:

"Stockholders were complaining, officers in the corporation were getting disgrun-

tled about this abstract thing nobody could really put their finger on. People were getting dissatisfied with Mr. Myers' salaries and with the profit picture of the corporation and things were beginning to shake up a little."

Plaintiff did not controvert this evidence.

In essence, trial court denied relief because plaintiff came into equity with unclean hands, Associate Investments, Inc. had ceased to exist, and the prayer of his petition was not so framed as to permit the court to grant him relief. In so holding, trial court observed that plaintiff had "the obligation * * * to establish that in this transaction he was doing equity."

Plaintiff relies on the following propositions for reversal: 1) he was not required to establish by a preponderance of the evidence he was doing equity, 2) the equitable doctrine of "unclean hands" has no application where plaintiff's alleged unconscionable conduct does not relate directly to the subject matter of, and the parties involved in, the litigation, and 3) the prayer was adequate to permit the court to grant relief by a vehicle other than Associate Investments, Inc.

■■■ I. Our review is de novo. Rule 334, Rules of Civil Procedure. We give weight to trial court's findings of fact, but are not bound by them. Rule 344(f)(7), R.C.P. If the judgment in an equity case is correct it is our duty to affirm it although the reasons given by trial court may not meet with our approval. Baldwin v. Equitable Life Assurance Society of United States, 252 Iowa 639, 108 N.W.2d 66 (1961); Merkel v. Merkel, 247 Iowa 495, 73 N.W.2d 75 (1955).

■■■ Apparent in trial court's decision, and litigants' briefs, is a tendency to confuse two separate although cognate equitable principles, each in its own way helpful to equity courts. The first is distilled in the frequently invoked maxim, "He who seeks equity must do equity." This doctrine requires a person seeking equitable relief to accord, or offer to accord, the other party all his equitable rights with respect to the subject matter. Fitchner v. Walling, 225 Iowa 8, 279 N.W. 417 (1938); Richardson v. Roberts, 148 Iowa 345, 124 N.W. 878 (1910); 27 Am.Jur.2d, Equity § 131, pp. 660–62; 30 C.J.S. Equity § 91a, pp. 988–993. The second ancient precept of the equity court is the maxim, "He who comes into equity must come with clean hands," and its corollary, *in pari delicto*. It is ordinarily invoked to protect the integrity of the court where granting affirmative equitable relief would run contrary to public policy or lend the court's aid to fraudulent, illegal or unconscionable conduct. New York Football Giants v. Los Angeles Chargers F. Club, 291 F.2d 471 (5 Cir. 1961); Sisson v. Janssen, 244 Iowa 123, 56 N.W.2d 30 (1952); 27 Am.Jur.2d, Equity §§ 136–144, pp. 666–81; 30 C.J.S. Equity §§ 93–96, pp. 1006–1031; Restatement of Restitution § 140 (1937).

As related to the court's application of the two maxims, the distinction is well drawn in 27 Am.Jur.2d, Equity § 133, at p. 663:

"[T]he maxim that he who seeks equity must do equity is held to be limited to conduct in dealings between the parties to the controversy, since to hold otherwise would bar equitable relief to a litigant upon proof that at any time prior to his application therefor, he was guilty of inequitable conduct. On the other hand, a person cannot expect a court of equity to enforce an agreement made with the intent that it shall operate as a fraud on the private rights and interests of third persons or the public generally."

Trial court's reference to plaintiff's obligation to prove he was "doing equity" was unfortunate and probably inadvertent. The actual holding was grounded on the "unclean hands" doctrine. That doctrine need not be pleaded, it may be applied by trial court sua sponte as it was in this case. Sisson v. Janssen, supra; 27 Am.Jur.2d,

Equity § 136, pp. 666–69; 30 C.J.S. Equity § 97, pp. 1031–1033; Annot. 4 A.L.R. 44, 47.

We find, as did trial court, plaintiff adequately carried out his initial obligations under the oral contract with defendant. The first maxim above referred to had no application. But that contract was a basic part of a scheme by which plaintiff violated his duty to Mid-Central Enterprises. As an officer of that corporation he used its assets and facilities in an attempt to increase his personal gain via the agreement with defendant. As conceived by the contract, Associate Investments would have been in direct competition with Mid-Central. Defendant, as an employee of Mid-Central also owed it a duty, but his duty was not as great as that of plaintiff.

In Holden v. Construction Machinery Company, 202 N.W.2d 348, 358 (Iowa 1972) we said:

"[O]fficers and directors of a corporate entity, particularly management controlling directors of closely held corporations occupy a fiduciary, or at least a quasi-fiduciary position as to the corporation and its stockholders. They are thus required to at all times act in utmost good faith, and must exercise powers held for the sole benefit of the corporation and its stockholders, never for their personal gain. Equity holds them strictly accountable as trustees."

See also First Trust & Savings Bank v. Iowa-Wisconsin Bridge Co., 98 F.2d 416 (8 Cir. 1938), cert. denied, Phoenix Finance Corporation v. Iowa-Wisconsin Bridge Company, 305 U.S. 650, 59 S.Ct. 243, 83 L.Ed. 420 (1938).

■ When these parties entered into the agreement trial court was requested to enforce, they intended to take personal advantage of their relationship to Mid-Central Enterprises. A decree of specific performance would lend the aid of the court in carrying out a plan to intercept profits rightfully belonging to the employer corporation and to create a competing company.

The interest of the "third party" (Mid-Central Enterprises) and the public generally would be adversely affected. The integrity of the court would be compromised. Trial court rightfully refused plaintiff affirmative equitable relief.

■ Where the contract sued on is part and parcel of a tainted scheme to evade the law or to bilk third parties, there is sufficient relationship between that conduct and the subject matter of the litigation for trial court in its discretion to invoke the "clean hands" doctrine. New York Football Giants v. Los Angeles Chargers F. Club, supra; Sisson v. Janssen, supra; 27 Am.Jur.2d, Equity § 136, pp. 666–69.

Those cases in which we have refused to apply the "clean hands" doctrine presented dissimilar situations. In Cedar Mem. Park Cem. Ass'n v. Personnel Assoc., Inc., 178 N.W.2d 343 (Iowa 1970) plaintiff demanded the doctrine be invoked against an intervenor who sought to have plaintiff conform to certain statutes. We refused, stating if we were to apply the "clean hands" doctrine we would be tacitly approving practices the legislature had declared contrary to the public good. In Butler v. Butler, 253 Iowa 1084, 114 N.W.2d 595 (1962) we affirmatively found plaintiff Earle Butler was not guilty of any incident which would have caused his hands to be "unclean." Those cases are distinguishable and are not controlling here.

■ II. What we have said disposes of plaintiff's propositions except for his contention the prayer was adequate to permit equitable relief even though it contemplated a conveyance to a nonexistent corporation. Our above holding moots that proposition. However, as plaintiff prayed for general equitable relief, we observe such technical obstacle would doubtlessly have been surmounted had the equities been with him. We have often said a prayer for general equitable relief is to be construed liberally, and will often justify

granting relief in addition to that contained in the specific prayer, provided it fairly conforms to the case made by the petition and the evidence. Baldwin v. Equitable Life Assurance Society of United States, supra; Kellerhals v. Kallenberger, 251 Iowa 974, 103 N.W.2d 691 (1960).

We hold trial court's determination was right, even though we do not agree with all of its reasons.

Affirmed.