**IOWA DEPARTMENT OF TRANSPORTATION, Appellant,**

v.

**NEBRASKA–IOWA SUPPLY COMPANY, Appellee.**

**IOWA DEPARTMENT OF TRANSPORTATION, Appellee,**

v.

**RIVERS ADVERTISING COMPANY, Paul P. Felton, Greta Felton and Lorna B. McKeown, Appellants.**

**Nos. 61110, 61507.**

Supreme Court of Iowa.

Nov. 22, 1978.

Rehearing Denied Jan. 19, 1979.

Richard C. Turner, Atty. Gen., Asher F. Schroeder, Franklin W. Sauer, Asst. Attys. Gen., and Robert W. Goodwin, Sp. Asst. Atty. Gen., for Iowa Department of Transportation.

James A. Brewer of Hegland, Newbrough, Johnston, Brewer & Maddux, Ames, for Nebraska-Iowa Supply Co., Rivers Advertising Co., Paul P. Felton, Greta Felton and Lorna B. McKeown.

Considered by REES, P. J., and UHLENHOPP, HARRIS, ALLBEE and LARSON, JJ.

REES, Justice.

We are concerned in this matter with two separate appeals, both emanating from the District Court of Story County, and which are consolidated here for disposition. Both cases involve the application of chapter 306C, The Code, 1975 (Iowa Junkyard Beautification and Billboard Control Act). In the first case the Iowa Department of Transportation (DOT) sought an injunction against Nebraska-Iowa Supply Company (Nebraska-Iowa) for the removal of several billboards owned by defendant allegedly located beyond 660 feet of primary highways within the state. The trial court, the Honorable Paul E. Hellwege presiding, denied the injunctive relief sought by DOT.

In the second case DOT instituted its action against Rivers Advertising Company (Rivers) and the owners of certain real estate upon which Rivers had been maintaining signs. Trial court in the second case, the Honorable Russell J. Hill presiding, entered its decree, declaring Rivers' billboards to be public nuisances and restraining the defendants from interfering with the removal of the billboards by DOT.

The similarity of the issues involved and the disparate results reached by the trial courts led to a consolidation of the cases for appeal.

We shall review first the factual situation in the first case, *DOT vs. Nebraska-Iowa*, and note later any features which distinguish the second case (Rivers) therefrom.

## NEBRASKA–IOWA SUPPLY CO. CASE

In the Nebraska-Iowa case, plaintiff DOT appeals from the judgment of the trial court denying plaintiff's request that it be granted an injunction for the removal of several billboards owned by defendant without being required to compensate the defendant.

DOT filed its petition on March 3, 1976, alleging the defendant had failed to obtain advertising permits for 18 billboards owned by it and located near primary highways in Iowa; that such billboards constituted public nuisances under § 306C.19, The Code, and were thus subject to removal; and that an injunction was necessary to restrain the defendant from interfering with the removal of the billboards. DOT asked that the defendant not be compensated for the signs to be removed. Attached to the petition were 18 separate notices mailed to defendant and owners of the land on which the

billboards were situated, in which DOT asserted that Nebraska-Iowa's permit applications had been denied since they had been filed after the statutory deadline of July 31, 1972 set by § 306C.18, The Code. Removal of the billboards was requested on the ground they were being illegally maintained under § 306C.19, The Code. DOT's petition also denied an allegation made by defendant in a letter to the plaintiff dated January 19, 1976, in which Nebraska-Iowa claimed the applications were filed belatedly due to the nonavailability of the forms at one of the plaintiff's offices. Nebraska-Iowa's answer denied all of the allegations of the plaintiff's petition. DOT later amended its petition, stating that four of the billboards had been removed and that the issue generated by its petition as to them was moot, that two of the billboards were within 660 feet of interstate highways, and that the remaining 12 billboards were beyond 660 feet of an interstate highway. Signs within 660 feet of an interstate highway are subject to different regulations under chapter 306B, The Code. This appeal by DOT involves only those signs subject to chapter 306C.

Trial was had to the court, resulting in the filing of findings of fact, conclusions of law and decree on February 17, 1977. The court found the billboards to have been erected between 1969 and 1971, and that they were valued between $2500 and $3500 each. The court found that eight of the signs were no longer in existence, and that the issue as to them was moot. One of the remaining signs was found to be within 660 feet of the interstate highway and thus subject to the provisions of chapter 306B, rather than chapter 306C. The court found that an agent of defendant Nebraska-Iowa had attempted to obtain permit application forms at the plaintiff's Council Bluffs office in late July, but that the office did not have the proper forms. Forms were later obtained by the agent during the first week of August at plaintiff's Atlantic, Iowa, office. The court held that although defendant submitted its applications on August 22, 1972, it was not informed until November 4, 1975 of the denial of said applications due

to their untimely filing. The court further found that the DOT departmental rule based on chapter 306C dealing with billboards did not become effective until September 27, 1973, and would not be applied to this case.

As to the nine billboards of Nebraska-Iowa still in existence more than 660 feet from a primary highway, the court denied the plaintiff's request for an injunction, concluding chapter 306C contained no authorization for removal without compensation and that such removal would be contrary to §§ 306C.15, 306C.16 and 306C.17.

On February 24, 1977 DOT moved to enlarge or amend the findings and conclusions of the trial court, requesting a finding as to whether Nebraska-Iowa could be allowed to apply after July 31, 1972, and then assessed fees in lieu of removing the signs upon payment of just compensation. The motion was overruled on the grounds that the relief requested had not been sought in the petition nor was there evidence in the record with reference to such claim.

Following said ruling, timely appeal of the trial court's judgment was taken to this court.

## RIVERS ADVERTISING COMPANY CASE

The case of *DOT vs. Rivers* differs in that the trial court there concluded that chapter 306C, The Code, did authorize the uncompensated removal of billboards for which applications had not been received as of July 31, 1972; that such regulation and removal constituted permissible exercises of the police power of the State of Iowa; and that proceedings pursuant to chapters 306B and 306C did not constitute "takings" in violation of the Fifth and Fourteenth Amendments to the United States Constitution or the Iowa Constitution. In *Rivers* the trial court directed the issuance of a writ of injunction from which order and decree Rivers has appealed.

\*     \*     \*     \*     \*     \*

As noted above, these two cases have been consolidated into one appeal for disposition before this court.

The following issues are stated for review:

(1) Does the uncompensated removal of billboards authorized by chapter 306C, The Code, constitute a valid exercise of the police power of the state and thus does not offend the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 9, of the Constitution of the State of Iowa?

(2) May the Department of Transportation refuse to issue a permit when it did not make application forms available at its district office during the critical period of July, 1972?

(3) Is the allowance of a period of 30 days after the effective date of chapter 306C, The Code, in which applications for permits may be made, an unreasonable, arbitrary and capricious violation of due process of law under the federal and Iowa constitutions?

We note preliminarily that defendants in both cases challenge the applicability of DOT rules promulgated after July 31, 1972. We do not reach that question as we find the conclusions of the trial courts to have been based on statutory grounds rather than upon departmental rules.

I.   DOT contends that if a person or corporation fails to acquire a permit for a billboard in accordance with § 306C.18, The Code, such billboard is subject to removal as a public nuisance without the payment of compensation, pursuant to § 306C.19, The Code.   Section 306C.18 provides in relevant part:

"* * *   The owner of every advertising device regulated by the provisions of this chapter   . . .   shall be required to make application to the department for a permit.* "

" * Application for initial permit before July 31, 1972."

Section 306C.12 makes clear the applicability of the permit requirement to the signs which are involved in this case:

"* * *   An advertising device shall not be constructed or reconstructed beyond the adjacent area in unincorporated areas of the state if it is visible from the main-traveled way of any interstate or primary highway except for advertising devices permitted in section 306C.11, subsections 1 and 2, and municipal recognition signs erected by any city or town. Any advertising device permitted beyond an adjacent area in unincorporated areas of the state shall be subject to the applicable permit provisions of section 306C.18."

Therefore, billboards and advertising devices beyond the adjacent areas, i. e., beyond the 660-foot limit adjacent to the rights of way of primary highways are subject to regulation and the permit requirements of chapter 306C.

Section 306C.19 provides:

"Any advertising device erected or maintained after July 1, 1972, in violation of this division or the rules promulgated by the department, is a public nuisance and may be removed by the department upon thirty days' notice, by certified mail, to the owner of the advertising device and to the owner of the land on which the advertising device is located.   * * *"

Any signs for which permit applications were not filed as of July 31, 1972, would be properly termed "public nuisances" under § 306C.19, since they are being maintained "in violation of this division" due to such untimely filing of the necessary application forms.

The trial court in the Nebraska-Iowa case found that nothing in Chapter 306C permits the Department of Transportation to remove signs which are more than 660 feet from the right of way.   In light of the second sentence of § 306C.12 quoted above, all advertising devices beyond 660 feet of the right of way are subject to the relevant permit provisions of § 306C.18, and any sign for which a permit application is not filed would exist in violation of the chapter. Contrary to the finding of the trial court in the Nebraska-Iowa case, chapter 306C would permit the removal of the advertising devices without compensation upon following the procedure outlined in § 306C.19.

The trial court in the Nebraska-Iowa case further concluded that §§ 306C.15, 306C.16 and 306C.17 were contrary to the sections which plaintiff argued to support the uncompensated taking and provided for compensation upon removal of advertising devices not in conformity with the provisions of § 306C. Section 306C.15 provides that just compensation shall be paid upon removal for "advertising devices lawfully in existence on July 1, 1972". It is not disputed that all the signs which are the subject of this litigation meet this statutory requirement. The trial court in the Rivers case found that under § 306C.15 the DOT is required to purchase signs not conforming to chapter 306C which were lawfully in existence on July 1, 1972. The court then concluded:

"Said section can be distinguished from section 306C.19. Under 306C.19, if an illegal sign *is maintained* after July 1, 1972, then the Department of Transportation can declare this sign a public nuisance and remove it at the owner's expense. In the instant case, the Defendants did not apply for a permit, therefore, their signs were illegal after July 31, 1972. The maintenance of the billboards by the Defendant, Rivers Advertising Company, after July 31, 1972, constituted a forfeiture of its right to compensation." (Emphasis by trial court.)

We must now determine which trial court was correct in its conclusions and rulings.

■ In establishing standards for the construction of statutes, we have said that effect is to be given a statute in its entirety and that a statute should be construed in a manner which will render no part superfluous. *Millsap v. Cedar Rapids Civil Service Commission*, 249 N.W.2d 679 (Iowa); *State v. Berry*, 247 N.W.2d 263 (Iowa). We have also noted that the legislature will be presumed to have enacted each part of a statute for a purpose and to have intended that each part be given effect. *Goergen v. State Tax Commission*, 165 N.W.2d 782 (Iowa). Effect will be given to every part of a statute unless sections thereof are irreconcilably repugnant. *Des Moines City Ry. Co. v. City of Des Moines*, 205 Iowa 495, 216

N.W. 284. Applying such standards to the statute under consideration here, it is concluded that the sections of the statute are not contradictory and that § 306C.19 does provide for the removal of nonconforming billboards without compensation to their owners.

Section 306C.15 provides that compensation be paid for advertising devices not in conformity with the requirements of chapter 306C which were lawfully in existence on July 1, 1972, the effective date of the statute. Thus any nonconformity which existed as of July 1, 1972 would not provide a basis for removal of the advertising device without compensation. Section 306C.15 does not, however, insulate such signs from nonconformities or violations of the chapter which arise subsequent to the effective date of the statute. To find such would render the permit requirement of § 306C.12 superfluous as it relates to signs and devices lawfully in existence on July 1, 1972. We find no indication of legislative intent to support such an exception to the general language of § 306C.12. Section 306C.15 should be construed to immunize advertising devices from attack for nonconformance to the chapter only as to nonconformities existing as of the effective date of the statute, not as to violations of the statute occurring subsequent to the effective date. Such a conclusion gives a reasonable interpretation to the statute and avoids any repugnancy between the sections of the chapter, giving effect to each section in accord with the presumed intent of the legislature.

Having resolved that the statute does authorize the removal without compensation of advertising devices which are maintained in violation of the chapter, we must now decide whether such removal constitutes a "taking" in violation of the United States and the Iowa Constitutions. The defendants contend that the removal procedure of § 306C.19, as applied to advertising devices lawfully in existence as of July 1, 1972, does constitute a taking under both constitutions and, therefore, the owners are entitled to compensation. DOT contends

that the provisions of chapter 306C authorizing the uncompensated removal constitute a valid exercise of the police power of the state and that no compensation need be paid for the taking. The trial court in the Rivers case found for plaintiff DOT regarding the constitutional challenge, while the trial court in the Nebraska-Iowa case, although basing its conclusion largely on the ground of statutory construction, also found the removal to be a taking violative of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, section 9 of the Iowa Constitution.

The defendants rely on the opinion of this court in *Stoner McCray System v. City of Des Moines*, 247 Iowa 1313, 78 N.W.2d 843, in which we held that a zoning ordinance which effectively eliminated much of the outdoor advertising in Des Moines and did not provide for compensation to the owners was violative of the Constitution. There we said:

> "The nub of this case is found in the question of whether or not the municipality may, by enacting a zoning ordinance, destroy or take the private property of the plaintiff without compensation, especially when prior to the enactment of the ordinance the plaintiff had expended substantial sums, as disclosed by the record, in constructing and operating upon lands owned or leased by it a lawful and useful business or occupation which was not a nuisance. Passing quickly then from the question as to whether such operations may be prohibited in certain districts in the future, we find most all of the authorities in agreement that a city cannot prevent the use of a sign previously and legally erected on real property unless it is a nuisance per se.
>
> " ' * * * The right to operate a legitimate business is one which the state may regulate but may not prohibit or unreasonably restrict.' "

247 Iowa at 1322–23, 78 N.W.2d at 849. The defendants also cite *Wolverine Sign Works v. City of Bloomfield Hills*, 279 Mich. 205, 208, 271 N.W. 823, 825, where the Supreme Court of Michigan said:

> "The city may establish zones and prohibit the erection of billboards therein and may, to promote public health, safety, and general welfare, within reasonable considerations, regulate the maintenance of billboards, but may not arbitrarily strike down the maintenance of erected billboards . . ."

Due to the articulation of the nuisance per se standard in *Stoner McCray, supra,* the parties to these appeals have engaged in considerable argument on this point. Such a focus is of possibly questionable value since the matter before us is distinguishable from *Stoner McCray* in several significant aspects. First, the ordinance in *Stoner McCray* amounted to a flat ban on the already existing signs. In the present cases § 306C.15 protects those advertising signs legally in existence on the effective date of the statute. Only by a subsequent nonconformance with the provisions of the chapter can a sign legally in existence on July 1, 1972 become subject to the uncompensated removal procedure of § 306C.19. The cases before us now would be similar to *Stoner McCray* if instead of requiring permits for existing signs, the statute and DOT had called for the removal of all existing signs not conforming to the standards of chapter 306C, regardless of their date of construction.

An analogous situation to that at bar exists where an enterprise does not apply for the necessary licenses or permits to carry on its business. Absent the permit or license, the entity is not allowed to continue in business. The issue here is not one of a statute declaring an existing business a nuisance and calling for its uncompensated cessation. Rather, it involves a determination of the reasonableness of the exercise of the state's police power in regulating a previously unregulated business enterprise. This change in focus or emphasis is necessitated by the fact that removal is occasioned not by the fact that the subject matter is a billboard, but by the fact that a timely application for a permit was not made within the period set by the statute. An enterprise need not be a nuisance to be subject to

the state's police power. See *Penn Central Transportation Co. v. City of New York*, —— U.S. ——, 98 S.Ct. 2646, 57 L.Ed.2d 631.

■■■ We must, therefore, consider whether chapter 306C is a valid exercise of the police power of the state. A pronouncement of this court in *City of Osceola v. Blair*, 231 Iowa 770, 771–772, 2 N.W.2d 83, 84, is enlightening.

"The police power of a municipality under said statutes to declare and prevent nuisances, to promote the public welfare, and to provide for the safety and comfort of its inhabitants should be exercised in the interest of the public welfare. The business of soliciting orders from house to house is a lawful occupation and does not adversely affect the public health, safety or welfare. The ordinance in question does not bear any relation to the public interest. That a municipality cannot make a lawful occupation unlawful, cannot deprive a person of his property rights in such business by declaring by ordinance the business to be a nuisance when it is not a nuisance, is too well settled to require citation of authorities."

In regard to this standard, we find the conclusions of the trial court in the Rivers case to be persuasive:

" * * * The legislature has the power to declare a previous lawful activity to now be an unlawful activity or a public nuisance. This is true even if it partially or fully destroys the value of property and this legislative action will not be considered a compensable taking if done pursuant to the state's police powers. To be under the state's police powers, a legislative action must bear a substantial relationship to the public health, safety, morals, or general welfare and must not be unreasonable and arbitrary.

"The legislative determination that Chapters 306B and 306C bear a substantial relationship to public safety and the general public welfare is not clearly erroneous. These statutes relate to public safety in that billboards could distract drivers and cause accidents. Also, the statutes promote the general welfare in that they promote the comfort, convenience, and peace of mind of those using the highways by removing annoying intrusions on that use. Further, these statutes promote the general public welfare as they promote aesthetic values. (citations.)"

Therefore, there is a clear basis in the record for the conclusion that the provisions of chapter 306C constitute a valid exercise of the police power of the state for which compensation need not be made. *Stom v. City of Council Bluffs*, 189 N.W.2d 522, 528–529 (Iowa); *Hinrichs v. Iowa State Highway Commission*, 260 Iowa 1115, 152 N.W.2d 248, 255. It cannot be overemphasized that the issue we have before us involves a removal for failure to comply with valid police power regulation by the state and not a wholesale declaration that a previously valid business pursuit is now a public nuisance. Only upon noncompliance with the permit requirements of §§ 306C.12 and 306C.18 did these billboards become subject to removal. It cannot be questioned that the right to pursue a business interest may be limited by the state through statutory regulation where the public health, safety, or welfare of society may require. *Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940. Such is the case here. Other courts have reached a similar conclusion regarding the regulation of roadside advertising devices. *Ghaster Properties, Inc. v. Preston*, 176 Ohio St. 425, 200 N.E.2d 328; *State v. Yard Birds, Incorporated*, 9 Wash.App. 514, 513 P.2d 1030; *Markham Advertising Co. v. State*, 73 Wash.2d 405, 439 P.2d 248, appeal dismissed, 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 512, rehearing denied, 393 U.S. 1112, 89 S.Ct. 854, 21 L.Ed.2d 813; *Modjeska Sign Studios, Inc. v. Berle*, 55 A.D.2d 340, 390 N.Y.S.2d 945; *People v. Ruth Outdoor Advertising*, 45 Misc.2d 98, 256 N.Y. S.2d 489.

The fact that the billboards must be removed due to violation of the valid police power regulations established in chapter 306C is likewise inoffensive to the "taking"

clause of the Fifth Amendment and its counterpart in the Iowa Constitution, Article I, Section 9. The imposition of a penalty for failure to comply with statutory provisions is but a necessary component of the police power. Although the following was said in regard to the Congressional police power, it is relevant in defining the proper scope of such power:

> "Where Congress, in the implementation of its constitutional powers, provides for penalties such as forfeitures, such action is not a taking of property in a constitutional sense. It is not an instance of eminent domain, in which property is taken because the use of such property is beneficial to the public. Rather, the property interest is infringed because Congress has deemed it necessary in order to preserve other incidents of the public welfare. As such, it represents a federal exercise of a police power to which the constitutional requirement of compensation is inapplicable."

*United States v. One 1962 Ford Thunderbird,* 232 F.Supp. 1019 (N.D.Ill.). Given the wide and varied scope of the police power, we cannot say that the regulations here are unreasonable or arbitrary, *Penn Central Transportation Co. v. City of New York, supra; Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797; *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446; *Goldblatt v. Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130; *Berman v. Parker,* 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27.

Based on the foregoing analysis, we hold that the removal procedure of chapter 306C, The Code, is a valid exercise of the police power of the state and as such is not an exercise of the power of eminent domain for which compensation must be paid. Therefore, the ruling of the trial court in the Rivers case should be affirmed. The trial court's conclusions and decree in the Nebraska-Iowa case remain subject to a resolution of the second issue stated for review.

II. The second issue involves the question as to whether the removal procedure of

chapter 306C may be invoked by DOT against Nebraska-Iowa Supply when the defendant attempted to procure application forms from the district office of the DOT in July of 1972 and found none available at that office. The trial court found that Nebraska-Iowa, upon obtaining the necessary forms at a later date from another district office, made late application for permits. There is no indication in the record that Nebraska-Iowa acted in bad faith.

Section 306C.18 provides that "the application for a permit shall be on a form *provided by the department*". (Emphasis supplied.) With the responsibility for providing the forms being upon DOT, we conclude that the inability of the defendant to obtain the requisite forms and make timely applications resulted from the failure of DOT to meet its statutory obligation. Since the defendant made a good faith effort to comply with the statute and was frustrated by DOT, it necessarily follows that DOT should be estopped from removing the billboards without compensation.

The elements of promissory and equitable estoppel have been most recently set out in *Merrifield v. Troutner,* 269 N.W.2d 136 (Iowa). The factual situation of the cases before us does not fit either of the definitions due to the fact that there is no oral agreement as required for promissory estoppel and that neither is there clearly a false representation or a concealment of material facts necessary to establish equitable estoppel. Also, we note that equitable estoppel is generally not invoked against the state, *Iowa Movers and Warehousemen's Association v. Briggs,* 237 N.W.2d 759 (Iowa); *In re Estate of McAllister,* 214 N.W.2d 142 (Iowa). Yet, when the state seeks to invoke the equity jurisdiction of the courts to act upon statutory noncompliance of which it is a contributing cause, the policies underlying the estoppel doctrine call for its application.

In *Laughlin v. Hall,* 236 Iowa 990, 20 N.W.2d 415, 417, this court stated:

> " 'In general, the doctrine of equitable estoppel is based upon the grounds of public policy, fair dealing, good faith, and

justice, and its purpose is to forbid one to speak against his own act, representations, or commitments, to the injury of one to whom they were directed, and who reasonably relied thereon.' "

More recently we said that equitable estoppel will be resorted to whenever injustice would result. *Iowa Movers, supra*; *McAllister, supra*. Such would be the result here if the injunctions were to be ordered as prayed by DOT.

■ Reaching such a result does not call for an expansion of the definition of estoppel, for there is an alternative basis grounded in similar considerations in the equity maxim of "clean hands". That the maxim is being asserted against the state rather than a private party in no way mitigates application thereof. As stated in *Iowa v. Carr*, 8 Cir., 191 F. 257, 266:

"The great weight of authority, the stronger reasons and the settled rule upon this subject in the courts of the United States, is that . . . when a sovereignty submits itself to the jurisdiction of a court of equity and prays its aid, its claims and rights are judicable by every other principle and rule of equity applicable to the claims and rights of private parties under similar circumstances".

When it invokes equity jurisdiction, the state is generally indistinguishable from a private party as to that claim.

We have stated that the defense of "unclean hands" is not favored by the courts. *Myers v. Smith*, 208 N.W.2d 919 (Iowa). This holding has not prevented us from accepting the defense when warranted by the facts of cases before us. *Myers v. Smith, supra*; *Boss Hotels Co. v. City of Des Moines*, 258 Iowa 1372, 141 N.W.2d 541, cert. denied 385 U.S. 852, 87 S.Ct. 95, 17 L.Ed.2d 80; *Miller v. Ellison*, 221 Iowa 1174, 265 N.W. 908; Cf. *Holi-Rest, Inc. v. Treloar*, 217 N.W.2d 517 (Iowa).

When DOT, in violation of its duty under § 306C.18, failed to make available applications for billboard permits within the statutory period for filing, it cannot properly assert that the required forms were filed in an untimely manner. The findings of the trial court indicate that defendant Nebraska-Iowa attempted in good faith to obtain the permits and comply with the registration requirement, only to find the forms unavailable. Upon obtaining the forms at another office at a later date, the applications were submitted subsequent to the July 31, 1972 deadline.

It is possible that at such time the applications may have been obtained at different offices of the DOT, but there is no information to that effect in the record. The statute still required DOT to provide the necessary forms and this it did not do. We, therefore, conclude defendant's failure to make timely application for permits was the result of plaintiff's failure to supply the necessary forms, and that to allow the removal of defendant Nebraska-Iowa's billboards due to their owner's untimely application would constitute an injustice in this case. Therefore, the Nebraska-Iowa Supply decree must be affirmed.

■ III. Defendants next contend that allowing a period of 30 days after the effective date of chapter 306C in which to apply for a permit is unreasonable and thus violative of the due process provisions of the United States and Iowa Constitutions. This question is not properly before us since (1) as to Nebraska-Iowa the question has become moot due to our resolution of the second issue in its favor; and (2) as to the Rivers case there is no indication that the alleged error was preserved for review, there being no mention of a reasonableness challenge to the application period in the findings and conclusions of the trial court. While review on an appeal of an equity case is de novo, *Rector v. Alcorn*, 241 N.W.2d 196, 199 (Iowa), our review is still limited to the record.

Had the defendant Rivers wanted reasonableness to be considered by the court in its judgment, and consequently this court on appeal, counsel should have submitted proposed findings or conclusions in accord with said position, or have sought an amendment and enlargement of the court's findings and

conclusions under rule 179(b), R.C.P., to accomplish a similar result.

For all the reasons stated above, the judgments of the trial court are, in both cases consolidated in this appeal, affirmed.

AFFIRMED.

All Justices concur except UHLEN-HOPP, J., who dissents from Division II.

UHLENHOPP, Justice (dissenting from division II).

I do not think we should announce a rule of estoppel of a state department because a district office does not have a required form. Had Nebraska-Iowa Supply written DOT headquarters and been unable to obtain the form, we would have a different case. I stated my views on this subject in *Iowa Movers & Warehousemen's Ass'n v. Briggs*, 237 N.W.2d 759 (Iowa). I concur in divisions I and III but dissent from division II.